# Dutch's Appeal.

57  461
129  634
57  461
148  143

1. Conveyances of land by a father to a child directly or by payment of the purchase-money and having the deed made to the child is primâ facie an advanced portion; this presumption is greatly strengthened when the value of the land bears any considerable proportion to the father's whole estate.

2. The main purpose of our statute relating to advancements is to cause equality among children, not equality in that which may remain at the death of the intestate.

3. Children received advancements in real estate. After the father's death a child not advanced, petitioned for partition of the remaining real estate of the father. She and another heir severally accepted parts of the real estate and entered into recognisances to secure the other heirs their equal shares:—*Held*, that she was not estopped from having the advancements taken into account in distributing the proceeds of the real estate adjudicated.

4. The equal and proportionable part of the intestate's estate coming to each heir, is such share as will make each child equal with the others after deducting advancements.

5. It is not too late after partition to settle advancements in the distribution of the valuation amongst those entitled.

March 19th and 20th 1868. Before STRONG, AGNEW and SHARSWOOD, JJ. THOMPSON, C. J., at Nisi Prius. READ, J., absent.

Appeal from the Orphans' Court of *Northampton county :* No. 361, to January Term 1868.

George Dutch died intestate in February 1867, leaving no widow, but leaving four children, George F. Dutch, Sarah R. Lewis, Rosamond R. Wendell, the wife of William M. Wendell, and Emma Baxter, the wife of Richard Baxter.

On the 25th of the next March all persons interested in his real estate presented a petition to the Orphans' Court, setting forth that the intestate had died seised of two messuages and lots of land in the borough of Bethlehem and praying the court to

appoint commissioners, chosen by the petitioners, to make partition of the premises.

On the 30th of the same month the commissioners reported that equal partition could not be made, and valued the property in two lots: No. 1 at $13,000 and No. 2 at $12,000. George F. Dutch offered to accept No. 1 at $17,005, and no heir offering more, it was adjudged to him at that sum. Emma Baxter offered to accept No. 2 at $16,000, and no heir offering more, it was adjudged to her at that sum. They were severally directed to enter into recognisances and to give bonds to the other legal representatives of the decedent for the payment to them of "their equal and proportionate shares and dividends," &c.

On the 22d of April 1867, Richard Baxter and Emma his wife petitioned the court, reciting the foregoing facts and proceedings; also, that George F. Dutch and Mrs. Baxter, with her husband, had entered into recognisances as directed by the court; that George F. Dutch had executed the bonds to the other heirs, including Mrs. Baxter, but that she had not yet executed any bonds; that the bond to her from George had been executed without her knowledge and that she had not accepted or recognised it or the other bonds in any way. The petition further represented, that in 1842 the decedent, in consideration of $1 and natural love and affection, conveyed to George F. Dutch a tract of land of 373 acres, which was worth $12,000; that in the same year the decedent, for a like consideration, conveyed to George F. Dutch, in trust for Sarah R. Lewis, the undivided moiety of a house and lot in New York, which was worth $6000; that the decedent in 1853 bought certain real estate from Ebenezer Ford, paid the consideration, $550, and had the conveyance made to Rosamond R. Wendell. The petitioners averred that the foregoing conveyances and payment were advancements to the children to whom they were made; prayed that George F. Dutch's bonds might be annulled, that other bonds be given in their stead for such sum as shall be found due to each of the heirs after the advancements shall have been duly charged; and for such other relief as may seem to the court proper, &c.

George F. Dutch answered, admitting the conveyances from his father for himself and Sarah R. Lewis in 1842, but averred that they were absolute gifts and not advancements. Sarah R. Lewis also answered, averring that the conveyance to her was an absolute gift.

There was a large amount of testimony taken on both sides. That on behalf of the petitioners related principally to the value of the real estate, the subject of the alleged advancements. They also gave evidence that the intestate had declared that he had given George a farm and had given a house to each of his two

oldest daughters; that these three children had got all from his estate that he intended they should have.

W. C. Munn, for respondents, testified that he drew deeds at the same time to George F. Dutch, in trust for Mrs. Lewis, and for Mrs. Hall, a daughter of decedent now dead. He said: "I have no recollection that Mr. Dutch said anything to me as to whether these deeds were gifts or advancements. The consideration of $1 and natural love and affection was put in by his direction. I only recollect that he said he conveyed the property to George in trust for his sisters." * * "According to the best of my recollection, it was meant as a gift. This recollection is derived from all the conversations I had with him on the subject, and all the instructions he gave me. I think I drew a deed to George for one of these lots; it's a mere impression. I have an indistinct recollection that Captain Dutch said he was going to give a farm to George."

On cross-examination, he said: "I have no distinct recollection of anything he said as to whether the conveyances were gifts or advancements. I can't say that it was ever the subject of conversation between us; that is, I can't recollect anything that was said. I can recollect that he said he was going to give those lots to George in trust for his sisters. I have a distinct recollection that he used the word gift, or one tantamount to it. That is all I can say; can't recollect the language."

John G. Hall, for respondents, said the intestate "frequently said to me that he intended giving each of his daughters a house."

Rosamond R. Wendell, for respondents, said: "I am a daughter of George Dutch. My father said in his last rational moments, about a week before he died, he wished the property sold and the money equally distributed among his four children. He said he wanted Mr. Jonas Snyder to sell it. That is all." * * "My father was rational at the time. It was the first time he was rational for some time."

Jonas Snyder, for respondents, testified that he had been sent for by the intestate about a week before his death. Witness further said: "He then wished me to take his whole estate into my care, sell his property and divide it equally among his children. He asked me if I was willing to do it. I promised I would. At this time he appeared to know what he was doing—more so than usual. He repeated this to me only that once."

On cross-examination the witness gave evidence tending to show insanity in the decedent.

The court (Jones, P. J.) decreed that "in making distribution of the valuation-money of real estate accepted by George F. Dutch and by Emma Baxter, the following advancements be taken into account:—

[Dutch's Appeal.]

| | | | | |
|---|---|---|---|---|
| Amount advanced to | George F. Dutch | . | . | $7805.00 |
| " | " | Sarah R. Lewis . | . | . | 4780.00 |
| " | " | Rosanna R. Wendell | . | . | 550.00 |

$13,105.00"

George F. Dutch and Sarah R. Lewis appealed, and assigned the decree for error.

*E. J. Fox* and *H. D. Maxwell*, for appellants.—The gift to be an advancement must have been so intended and understood at the time: 2 Redfield on Wills 908, pl. 19; Christy's Appeal, 1 Grant 370; King's Estate, 6 Whart. 373; Levering *v.* Rittenhouse, 4 Id. 130; Lawson's Appeal, 11 Harris 85; Miller's Appeal, 4 Wright 57; Hengst's Estate, 6 Watts 87; Yundt's Estate, 1 Harris 575.

Mrs. Baxter having joined in the proceedings for partition, having accepted, &c., she is estopped: Co. Litt. 667; Duchess of Kingston's Case, 2 Sm. L. Cases 424 note 467; Anderson's Appeal, 4 Yeates 35; Herr *v.* Herr, 5 Barr 430; Mehaffy *v.* Dobbs, 9 Watts 363; Baily *v.* Baily, 8 Wright 274; Act of March 29th 1832, § 2, Pamph. L. 190, Purd. 764, pl. 4; Gilmore *v.* Rodgers, 5 Wright 127.

*H. Green*, for appellees.—As to the advancement: Act of April 8th 1833, § 16, Pamph. L. 319, Purd. 565, pl. 35; Sidmouth *v.* Sidmouth, 2 Beav. 454; Murless *v.* Franklin, 1 Swanst. 17; Crabb *v.* Crabb, 1 Mylne & Keene 511; Phillips *v.* Gregg, 10 Watts 158; Wagner's Appeal, 2 Wright 122; Murphy *v.* Nathans, 10 Id. 508; Glaister *v.* Hewer, 8 Vesey 208; Finch *v.* Finch, 15 Id. 43; Hodgson *v.* Macy, 8 Ind. 121; Temper *v.* Barton, 18 Ohio 418; Haverstock *v.* Sarbach, 1 W. & S. 390; Harris's Appeal, 2 Grant 204; Roland *v.* Schrack, 5 Casey 125; Hatch *v.* Straight, 3 Conn. 31; Buckley *v.* Noble, 2 Pick. 340; Kreider *v.* Boyer, 10 Watts 54; Green *v.* Howell, 6 W. & S. 203; Blanchard *v.* Commonwealth, 6 Watts 309; Riddle's Estate, 7 Harris 431; Ake's Appeal, 9 Id. 320; Act of 29th of March 1832, § 37, Pamph. L. 201, Purd. 294, pl. 130.

The opinion of the court was delivered, March 27th 1868, by

STRONG, J.—There is in this case no evidence exactly contemporaneous with the deed which the father made to his son, or with those which he made to the son in trust for the daughters (except what is found in the deeds themselves), that indicates whether the conveyances were intended to be simple gifts or advancements. They were assurances of land, and in each case the value of the property conveyed was large, when considered relatively to the

[Dutch's Appeal.]

whole estate of the grantor. The presumption of law, therefore, is, that they were advancements, and not mere gifts, and hence the burden lies upon those who allege they were not advancements to rebut the presumption raised from the subject and the value of the property thus transferred to the children. Nothing is better settled than that a conveyance of land by a father to a child, either directly or by payment of the purchase-money and having the deed made to the child, is primâ facie an advanced portion, and this presumption is greatly strengthened when the value of the land bears any considerable proportion to the father's whole estate. Our Intestate Act of 1794 enacted that if " any child of an intestate shall have any estate by settlement of such intestate, or shall have been advanced by him in his lifetime, either in real or personal estate, to an amount or value equal to the share which shall be allotted to each of the other children of such intestate, such child shall have no share of the real or personal estates, and if such settlement or advancement be to an amount or value less than the share to which he would otherwise be entitled, if no such advancement had been made, then so much only of the real and personal estate of such intestate shall be allotted to such child, as shall make the estate of all the said children to be equal, as near as can be estimated." This provision was substantially re-enacted by the revised statute of April 8th 1833, and it was derived from the 22 & 23 Car. II., ch. 10, of which it has been said that it is founded on equality, the most just rule of equity. In 2 Peere Williams 440, Sir Joseph Jekyl said, " the design of the statute was to do what a just and good parent ought for all his children ;" and Lord Raymond said, " it makes such a will for the intestate, as a father, free from partiality of affections, would make." It is noticeable that the act speaks of settlements, which are ordinarily by deed, and its main purpose is to cause equality among children, not equality in that which may remain at the death of the intestate, but equality in the distribution of all that came from the ancestor. The statute itself then would raise a presumption, without the aid of what is known to be the common understanding, that when a father makes a deed of gift to a child, he intends the gift to be an advanced portion, and such is the doctrine of the decisions.

In this case the intestate left four children. To three of them he had made voluntary deeds for lands valued at $13,105. The remainder of his estate was about $35,000. Nearly one-third of his estate he distributed in his lifetime. If the deeds to the three children are not now to be regarded as having been advancements, it must be because the grantees have shown that they were intended as simple gifts, and not as distributions of advanced portions. And this they must have shown by a weight of evidence sufficient to overcome a decided presumption against them. We

7 P. F. SMITH—30

do not find such evidence in the record. As already remarked, there is no evidence of what occurred at the time when the deeds were made and delivered, except what is found in the deeds themselves. There are two witnesses who speak of declarations of the father, made before the deeds were given to George F. Dutch, the son, in trust for the daughters. They are John G. Hall and W. H. Munn. Hall testifies that the intestate said he intended to give a house to each of his daughters. When this was, does not appear. But it has no bearing upon the deed to the son for the son's use, and it has no necessary reference to the deeds made for the son in trust for the two daughters. Besides, the words are as applicable to an intended advancement as to a simple gift. An advancement is a gift. And even had there been an intention to make a mere gift at the time when the language was used, the intention may have been changed. The precise question is, what was the intention when the deeds were made, not what it was before or after. And it is very certain that whatever the design of the intestate was at the time of which Mr. Hall speaks, it was never carried into complete execution. The testimony of Mr. H. Munn is no better. It has no reference to the deed made to George F. Dutch, the son. He drew the deeds to the trustee for the two daughters, but he does not appear to have been present when they were executed and delivered. He has no recollection that the intestate said anything as to whether they were gifts or advancements. According to the best of his recollection, it was meant as a gift. This recollection is derived from all the conversations with the intestate. But he cannot say it was ever the subject of conversation between them. He recollects that the word gift, or one tantamount to it, was used. All this is very far from proving that the deed for the benefit of the two daughters was intended to be beyond the equal share of the intestate's estate. It is quite insufficient to overcome the presumption raised by the law from the nature of the settlement, and the value of the property settled, or to establish what was an inherent improbability. The witness speaks only of his impressions of what the intestate meant, and not of his recollections of what was said. The distinction between an advancement and a simple gift was not alluded to in the conversation.

Nor is there anything in the subsequent declarations of the intestate at all inconsistent with the presumption that the conveyances to the three children were intended as gifts of advanced portions. Throwing out of consideration the declarations of the father that the children for whose use the deeds were made, had received their share of his estate, or that his daughter Sarah and his son George had, and regarding alone the testimony adduced on behalf of the said two children, we have only that of Mrs. Wendell and Jonas Snyder. Both speak of the same conversa-

tion, one which occurred some twenty-five years after the conveyances were made. It was in his last illness, in a lucid moment, after he had been irrational for some time, about a week before the intestate died. He then said he wished the property sold, and the money equally distributed among his four children. He wished Jonas Snyder to do it. This was testamentary language, and it was inoperative as an oral testament. It did not allude to the partial distribution he had made. It was no avowal of what was his intention when he made the deeds twenty-five years before. If they were then advancements, it was not a conversion of them into mere gifts, and as it did not allude to them, it was not even an expression of his opinion respecting their character at first. What the conveyances were at the time they were made, they necessarily remained until some act was done to convert them into gifts. There is then nothing in this case to rebut the presumption that the deeds to George F. Dutch for his own use, and for the·use of his sister, Mrs. Lewis, were advancements.

Nor do we see that there is in the proceedings of the Orphans' Court in partition any estoppel against asserting that some of the parties had been advanced. Mrs. Baxter, the appellee, united with her brother and sister in applying for commissioners to make partition of the land of the intestate. She accepted a purpart and entered into a recognisance to secure to the other heirs their equal and proportionable part of the valuation or price at which it was accepted. But what is an equal and proportionable part? The Acts of Assembly determine that it is such a share as shall make each child equal with the others, after deducting his advancements. Doubtless a decree in partition is conclusive of the right as between the parties. But right to what? To the land divided or allotted. To nothing more. It is not too late after partition to settle the matter of advancements to some of the parties, and consequently the distribution of the valuation-money among those by law entitled: Blanchard v. Commonwealth, 6 Watts 309.

　　　　　The decree of the Orphans' Court is affirmed at the costs of the appellants.