## APPEAL OF LOUISA MENGEL ET AL.

### APPEAL FROM THE ORPHANS' COURT OF BERKS COUNTY.

Argued March 4, 1887—Decided May 9, 1887.

The will of Jacob Leiby, deceased, contained this provision: " I bequeath and direct that all my personal and real property shall as soon as con- venient be, sold at public vendue to the highest bidder, by my execu- tors hereinafter named, and also collect all outstanding money, and divide the same among my children and legal heirs in such portions, so that if all the notes I hold against them or any of them my said children and heirs, and all moneys advance to them or any of them, my said children and heirs, that their shares or dividend of each amounts to the same, share and share alike." Held,

That a certain book left by the testator containing a record of articles and moneys supplied to his children should be adjudged, together with notes held, as advancements to be charged against the interests of such chil- dren.

Before MERCUR, C. J., PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.; GORDON, J., absent.

No. 22 January Term 1887, Sup. Ct.

Jacob Leiby died on April 5, 1884, leaving to survive him as his heirs at law children and the children of deceased chil- dren. The will of the decedent duly proved contained the following provision:

2. I bequeath and direct that all my personal and real prop- erty shall as soon as convenient be, sold at public vendue to the highest bidder, by my executors hereinafter named, and also collect all outstanding money, and divide the same among my children and legal heirs in such portions, so that if all the notes I hold against them or any of them my said children and heirs, and all moneys advance to them or any of them, my said children and heirs, that their shares or dividend of each amounts to the same, share and share alike.

The testator left a family book which he had been keeping for many years as far back as 1855, and in which he had made entries under the names of Esther U. Leiby, Jacob U. Leiby, Ephraim Leiby, John Leiby, Hannah U. Leiby, Isaac U. Leiby,

### Statement of Facts.

Joseph U. Leiby, Helena U. Leiby, Henry U. Leiby and Lucy Ann Leiby, who were his children. The book began with a heading in German on the first page, the original, and a translation being as follows:

Dis Buch, sei inhalt ist was ein ietes vor aussteier gekregt hatt, wo bis auf.elt geschaft hen.

Johan was 3 iahr vor seiner elt abwesent, daher solche ein huntert thaler angerechelt werten vor die trei iahr.

Vor das, woh in dem Buch aufgeschrieben ist, sollen keine intressen gerechelt werten, ausgenommen was ueber 900 huntert ist, da sollen sie gerechnet werten.

[Signed]       JACOB LEIBY.

The contents of this book is what each one has received for outfit who have worked until they attained their majority.

John, who was away three years before his majority, therefore shall be charged one hundred dollars for the three years.

For that which is charged in the book, no interest shall be reckoned, excepting what is more than 900 dollars, there they shall be reckoned.

[Signed]       JACOB LEIBY.

The following are illustrative extracts from the entries under the names of John Leiby and Isaac U. Leiby, with translations:

| *Johan Leiby sei aussteier.* | | | *John Leiby, his Outfit.* | | |
|---|---|---|---|---|---|
| ein bet und betlat | 18 | 00 | a Bed and Bedstead | 18 | 00 |
| 1 tebig | 2 | 50 | 1 Coverlet | 2 | 50 |
| acks und misthaken | 2 | 40 | Ax and manure forks | 2 | 40 |
| * * * * * * | | | * * * * * * | | |
| catacismus | | 18 | Catechism | | 18 |
| testament | 1 | 00 | Testament | 1 | 00 |
| 3 bushel Korn | 1 | 65 | 3 Bushels Rye | 1 | 65 |
| * * * * * * | | | * * * * * * | | |
| 3 iahr vor seiner elt vortgeganen | 100 | 00 | gone away 3 years before his majority | 100 | 00 |
| ein amberel | 1 | 00 | an umbrella | 1 | 00 |
| beiszang | | 37 | Pincers | | 37 |
| * * * * * * | | | * * * * * * | | |
| 2 sei | 7 | 00 | 2 Pigs | 7 | 00 |
| * * * * * * | | | * * * * * * | | |
| 1870 hat gekriegt die intresen von 11 huntert und 2 huntert von der haubt sum | 255 | 00 | 1870 has received the interest of 11 hundred and two hundred of the principal sum | 255 | 00 |
| | $1,668 | 58 | | $1,668 | 58 |
| *Johan u. Leiby sei sach.*—(*Continued.*) | | | *John U. Leiby, his things.*—(*Continued.*) | | |
| wehen dem arnt seim Gotment hat johan gekriegt die sum von $1,600 huntert | | | By reason of Arndts judgment, John has received the sum of 1,600 hundred dollars | | |
| Abrill 1, 1880, ist das aufgerechelt worten | 2,982 | 79 | April 1, 1880, this was reckoned up | 2,982 | 79 |

Statement of Facts.

| *Eisick u. Leiby sei aussteier.* | | | *Isaac U. Leiby, his outfit.* | | |
|---|---|---|---|---|---|
| catacismus.............. | | 18 | Catechism.............. | . | 18 |
| testament.... ............ | 1 | 00 | Testament............. ..... | 1 | 00 |
| ein Kist................. | 5 | 00 | a Chest................. | 5 | 00 |
| noch ein Kist............ | 4 | 00 | another Chest.... ...... | 4 | 00 |
| ein Wik................. | 2 | 50 | a Cradle................ | 2 | 50 |
| sens und frucht reff...... | 6 | 00 | Scythe and grain scythe.. | 6 | 00 |
| ein bet und betlat........ | 20 | 00 | a Bed and Bedstead...... | 20 | 00 |
| 2 tebig.................. | 5 | 00 | 2 Coverlets.............. | 5 | 00. |
| Koch Kesel........... .. | | 80 | Boiler................ ........ | | 80 |

\*     \*     \*     \*     \*     \*          \*     \*     \*     \*     \*     \*

| *Eisik sei sach vor aussteier.—(Con-* *tinued.)* | | | *Isaac, his things for outfit.—(Con-* *tinued.)* | | |
|---|---|---|---|---|---|
| in gelt an Eisik bezalt auf dem grosen buch toher gebracht.............. | 136 | 17 | in money paid to Isaac out of the large book brought forward....... | 136 | 17 |
| ein bank................ | | 95 | a bench................. | | 95 |
| ein sau................ ..... | 2 | 00 | a pig................ ...... | 2 | 00 |
| 1870 ein Dish vor Karten spilen................ ....... | 1 | 95 | a table to play cards...... | 1 | 95 |
| bort und negel vor bort Dish.................. | 1 | 05 | Boards and nails for Board Table................. | 1 | 05 |
| ein bank................ | | 96 | a bench................. | | 96 |
| Abrill 1, 1880, ist das aufgerechelt worten....... | 550 | 42 | April 1st, 1880 This reckoned.................. | 550 | 42 |

Sometime in 1879, and before the execution of his will, the testator placed the book in the hands of David G. Mengel, his grandson-in-law, to reckon up each one's amount. These sums subsequently the testator entered in said book in his own hand-writing, and in the examples above they are shown by the entries of date April 1, 1880.

The testator, at his death, also held notes made by certain ones of his children, which notes were not under seal, and, as evidences of indebtedness, would have been barred by the statute of limitations.

Jacob U. Leiby, Isaac U. Leiby and David G. Mengel, the executors of said will, on April 24, 1885, settled their account, to which exceptions were filed by the appellant and others. The account and exceptions coming on for adjudication, a contention arose whether the book before mentioned was a book containing a record of advancements, or a book of accounts of indebtedness charged against testator's children, and as such barred by the statute of limitations.

On the hearing, evidence was introduced in proof of the family book and of the manner in which it was kept; that about four months before his death he told a witness " he would

leave a writing back when he was not here any more, so that all the heirs could see what each one had got, and then it would not give any dispute;" that to another witness he said " that he wanted to keep his children alike so that there would be no difference between them, not even a cent."

The court, HIRAM H. SCHWARTZ, P. J., upon the contention referred to, held :

It is contended that the amount charged against the children in a certain book must be deducted from their respective shares by and under the will. . . . . . .

The accounts against the several children begin usually with the item of eighteen cents for a catechism or items of house furniture or mechanical tools. It may thus be inferred that these charges were made against these children either in their youth, when they were struggling for an education, or at their first approach to manhood, when they entered upon real life and required furniture and tools in their pursuit of it.

There is nothing contained in the book or expressed in his declarations that these charges should be advancements; and were this estate an intestate's estate, they would be debts and as such not proven under the plea of the statute of limitations. There is not a single fact or circumstance in the case that even tends to show that the parent intended them as advancements at the time the property or money was received or alleged to have been received by the children. Such intentions must exist at the time the property or money is advanced.

There is no proof that the charges were made when the property or money was received or alleged to have been received by the children. Declarations made by the parent at the time or subsequent to the time when the charge is made in the absence of the children and not communicated to them are not sufficient: Millers Appeal, 40 Penn. St. 57.

In Haverstock v. Sarbach, 1 W. & S. 390, it is said, " Loose declarations of a parent, that he intended an existing debt should be an advancement not substantiated by writing, not made to the children, nor assented to by them, nor accompanied by an act, are not sufficient to destroy a debt secured by a legal instrument in full force, and change it into a gift, by way of advancement, whether offered by the son to defeat the recovery of the debt or by the representatives of the father

against the son to defeat his claim for a distributive share."
In Yundt's Appeal, 13 Penn. St. 575, it is held that "declarations of a parent made after debts have been contracted, of an intention to treat them as advancements are not admissible to produce that effect where the declarations are not communicated to the child nor accompanied by an act to obliterate the obligations as debts." In Merkel's Appeal, 89 Penn. St. 340, this doctrine is re-affirmed and the cases maintaining it, approved. There is no allegation that the declarations of the decedent of his intentions to charge what the children had received as advancements (if any such declarations were made) were communicated to any of the children or that any of them has assented to such a charge being made. The book, call it by any name you please, does not substaniate such an intention. The testator's conduct and acts create a contrary presumption.

At about the time he desires to make a will, he takes his papers and hands them to Mr. Mengel, with the request to make a calculation; what calculation of what matter, and by what process has not transpired. The calculation was certainly progressive; and whether the calculator adopted the rule of arithmetical or geometrical progression and whether progression was by increase or decrease, he certainly employed no insignificant number as common difference, quotient or multiplier. But be that as it may, as a result and in pursuance of this calculation the decedent made the following entries in his book, viz.: [Entries made April 1, 1880, and subsequently, reviewed.]

How these results were obtained can only be imagined. We presume interest forms in most instances a great part of the items " reckoned " as appears by the following statement of the amounts actually contained in the book and charged against the children respectively and the amounts "reckoned." . . . . . .
Certainly no one will contend that if there were no will that the charges in the book, the declarations of the decedent or his conduct and acts relative thereto or all of them together, would make or change these charges in the book or the notes he held against Ephraim, Helena and Lucy Ann at the time of his death into advancements.

In the next place, does the will turn or change these book

charges and notes or either of them into advancements? Was this the testator's intention? This intention must be gathered from the four corners of the will. The will directs that after the payment of the funeral expenses, his just debts and one hundred dollars to the one who took care of and provided for him, when he was himself unable to do so, " all his estate should be divided among his children and legal heirs in such portions so that, if all the notes he held against them or any of them his said children or their heirs and all moneys advance to them and said children and heirs that their shares or dividend of each amount to the same."

The entries in the book have all the appearance of book accounts, intended to show the indebtedness of the children. They have no mark identifying them as advancements. They are for interest on money received by the children. They are for rent. These accounts are changed from time to time. New balances struck and in every way treated as accounts showing an indebtedness by the children. The book was kept in such a way that it is now unintelligible to any one. The debit and credit sides seem to have been kept on the same side, and the whole added together; for instance, in the account of Isaac U. Leiby, there is an item, as follows, "1869 meat deducted from reckoning $6.08," and added to the account, instead of subtracted. This is only one instance; there are many of a similar character.

Some of the children deny the correctness of the accounts. Of course we have no power to pass upon that question. Our duty is to determine what the testator intended to give to each of his children.

It must be conceded that the amount charged in the book against the children cannot be deducted from their respective shares, unless they are advancements made to them. For by the directions of the will, money advanced alone shall be deducted. Look at the accounts as we may, they involve the idea of obligations or future liability. The fact of charging amounts giving credit either in part or in whole of such amounts, and striking new balances from time to time involves the relation of debtor and creditor, and precludes all idea of advancement: Yundt's Appeal, 13 Penn. St. 575.

If the will directed that certain amounts should be deducted

from the respective shares of the children, or that the amount charged in his book (describing it) should be so deducted, then the way would be clear. But the will does not refer to the book, but directs that his estate shall be divided among his children and heirs in such portions, that with the notes he held against them or any of them and their heirs, and all moneys advanced to them or any of them and their heirs, their shares shall be equal.

The charges in the book are not advancements of money to the children and are not mentioned or referred to in the will, and therefore cannot be considered a·part of the decedent's estate and deducted from their shares. The notes are mentioned in the will. They are thus referred to in it, viz.: " The notes I hold against them or any of them and heirs, etc." The intention of the testator no doubt was that all notes against the children by him held should form a part of his estate, and that they should be deducted from the shares of those against whom they were held.

That a testator has power to convert an obligation into an advancement, or to direct that the amount of a note against a child should form a part of the assets for distribution and be deducted from its share, there is no doubt: Watson v. Watson, 6 W. 254; Wright's Appeal, 89 Penn. St. 67; Wright's Appeal, 93 Id. 82; Hutchinson's Appeal, 47 Id. 84; Porter's Appeal, 94 Id. 332.

And a testator has such power, whether the notes are valid or not. . . . . . .

Interest, where notes are thus charged by a testator in his will against his children, is not chargeable, unless there be a clear expression of such intention: Porter's Appeal above cited, Green v. Howell, 6 W. & S. 203; Hutchinson's Appeal, 47 Penn. St. 84. The two notes against Ephraim, the one for $524, and the other $180, are therefore deducted from his share; the note against Helena U. for $100 from her share, and the note against Lucy Ann Goldstraw for $714 from her share.

To this finding of the court and the distribution based thereon, in so far as it refused to consider the book as evidencing advancements, Louisa Mengel and others filed exceptions

which were overruled and a decree made accordingly, where-upon the exceptants took this appeal.

*Mr. Adam H. Schmehl* (*Mr. Adam B. Rieser* with him) for the appellants:

1. An examination of the book itself will satisfy the court that it is a book of advancements, and that advancements were the intention of the decedent when he charged the various items therein contained. " The contents of this book is what each one has received for outfit who have worked until they attained their majority." An exception is made in the case of John, who is charged $100 for his three years absence.

The reckoning of interest on " what is more than $900 dollars," affirms the theory of equality. The courts, however, have decided that interest is payable when there is a clear expression that interest shall be paid: Fickes v. Wireman, 2 W. 314; Porter's App., 94 Penn. St. 336.

Advancement is a question of intention and a debt may be converted by a decedent into an advancement: Kirby's App., 109 Penn. St. 41; Wentz v. Dehaven, 1 S. & R. 312; Mast's App., 40 Penn. St. 24; Yundt's App., 13 Idem 575; Miller's App., 40 Idem 62; Thompson's App., 42 Idem 345.

To determine whether the charges were intended as advancements must appear from the book and the intention gathered from the book, and the surrounding circumstances are to be considered: Yundt's App., *supra;* Weaver's App., 63 Penn. St. 311; Weatherhead v. Field, 26 Vt. 665; Fellows v. Little, 46 N. H. 27; Hollister v. Atmore, 5 Jones Eq. 373; Brown v. Brown, 16 Vt. 204; Buckley v. Noble, 2 Pick. 340; Hall v. Davis, 3 Idem 450; Ashley's App., 4 Idem 21; Miller's App., *supra;* Oller v. Bonebrake, 65 Penn. St. 338.

The declarations of the decedent were not offered to show that the testator had treated debts as advancements, but as evidence of the existence of his family book and of his original intention: Yundt's App., *supra;* Merkel's App., 89 Penn. St. 343; Knabb's Est., 2 Wood. 386; Hengst's Est., 6 W. 86.

2. It was the intention of the testator, and so provided in his will, that the said book should be included in the distribution of his estate as a part thereof, so that the shares of each should be the same.

Though there is no technical advancement in case of testacy, yet a testator may provide the same equality and equity in his will, which is accomplished by the technical advancement in case of intestacy : Schneider's App., 16 Penn. St. 411. All the circumstances of the testator, his family, property, should be considered: Postlethwaite's App., 68 Penn. St. 478; Follweiler's App., 102 Idem 581. All mere technical rules of construction must give way to the plainly expressed intention : Porter's App., 94 Penn. St. 332; Reck's App., 78 Idem 432; Still v. Spear, 45 Idem 168; Wright's App., 89 Idem 67; Watson v. Watson, 6 W. 254; Thompson's App., 42 Penn. St. 356; Wagner's App., 38 Idem 122; Wheelen's App., 70 Idem 410; Green v. Howell, 6 W. & S. 203; Hutchinson's App., 47 Penn. St. 84; Bird's Est., 2 Pars. 168; Schneider's App., *supra.*

*Mr. J. H. Marx (Mr. John F. Smith* with him), for the appellees.

1. The question submitted to the court below was a question of fact, and the decision will not be reversed except where the mistakes of the court were very flagrant: Ake's App., 21 Penn. St. 320; Roddy's App., 99 Idem 10; Gibson's App., 25 Idem 191; McConnell's App., 97 Idem 31; Rowling's Est., 37 Leg. Int. 133; Riddle's Est., 19 Penn. St. 431.

2. The doctrine of advancements is applicable in its full extent and bearing only to cases of intestacy. When a man dies testate, whether what was given to a child is to be treated as an absolute gift, debt or advancement, is to be determined from the intention expressed in the will and extrinsic matters and testimony : Watson v. Watson, 6 W. 254; Wright's App., 89 Penn. St. 67; and the testator fails to connect the book with the will, by any reference therein to it.

3. An advancement, to be treated as such, must appear to be a gift in anticipation of the child's share, a giving and charge with such intent. We submit that the charges of interest accrued on notes and obligations and charges of interest forgiven are not for money advanced. Being a debt at the time the liability accrued, it is beyond the power of the testator to change it into advancements by any declaration contained in a book or made orally : Levering v. Rittenhouse, 4 Wh. 130; Yundt's App., 13 Penn. St. 575; Miller's App., 40 Idem 57; Merkel's App., 89 Idem 340.

OPINION, MR. JUSTICE STERRETT:

After providing for the payment of his debts, funeral expenses, etc., the testator directs his executors to convert all his property, real and personal, into money "and divide the same among my children and legal heirs in such proportions so that if all notes I hold against them or any of them my children and heirs, and all moneys advanced to them or any of them, my said children and heirs, that their shares or dividend of each amounts to the same, share and share alike."

While the language thus employed by the testator to define his scheme of distribution, is not as well chosen as it might have been, it is very evident his intention was to effectuate substantial equality among all his children by taking into consideration not merely the residue that might be in the hands of his executors for distribution, but also the notes held by him against some of his children, and the amount each child had received, in testator's lifetime, in money or its equivalent. Notes, evidently those referred to in the clause above quoted, were found among testator's papers; and as to them there was no difficulty. The learned judge of the Orphans' Court added their face value to the adjusted balance in hands of the executors. The same course should have been pursued in regard to the money and personal property received by each of the children, during their father's lifetime, and intended by him to be on account of their respective shares or portions of his estate. The court however came to the conclusion that the "Family Book," containing detailed statements of personal property, including household and kitchen furniture, farming implements, stock, provisions, etc., with the value of each article attached, and some items of cash received by each of the children, was an ordinary book of accounts, creating the relation of debtor and creditor between each of them, respectively, and their father; and, inasmuch as the claims were all barred by the statute of limitations, they must be wholly disregarded in making distribution. In this we think there was error. The "Family Book," containing statements above referred to in testator's handwriting, was found among his papers, and appears to contain internal evidence of intention on his part, that the memoranda therein contained should be ultimately used in making a just and equitable distribution of his estate among

the children, and not as a book of accounts containing charges against each as an ordinary debtor.

With few exceptions, the entries in the book are without date. Under the name of each child the entries commence with, " Catechism 18 cts.," " Testament $1," followed by various other articles, to each of which is appended a cash value. At the beginning of the book is the following memorandum in testator's handwriting and signed by him, viz. : " The contents of this book is what each one has received for outfit who have worked until they attained their majority. John, who was away three years before his majority, therefore shall be charged one hundred dollars for the three years. For that which is charged in the book no interest shall be reckoned, except what is more than nine hundred dollars, there they shall be reckoned." In the body of the book, under the heading " John Leiby, his outfit," appears this entry : " gone three years before his majority, $100." It is claimed that this memorandum was made not for the purpose of collecting the sum named from John, but with the view of ultimately treating it as an advancement and thus in connection with the notes, other entries, etc., in the Family Book, equalizing the respective shares or portions of the children. The general features of the book undoubtedly favor this contention.

Again, under the head of " Isaac his things for outfit," is this memorandum : " In money paid to Isaac out of the large book brought forward $136.17." In testator's " large book " or ledger, that sum appears as balance due by Isaac on settlement of certain business transactions between him and his father, and underneath, these words : " This is written in the little book against Isaac for inheritance." These entries evidently mean that the cash balance on the ledger at that time against Isaac, was transferred to the family book for the purpose of recording it there as part of the amount advanced to him, as cash or its equivalent, and to be accounted for thereafter as an advancement. Without referring to other features of the family book indicative of its purpose, we are satisfied it was kept by the testator, not as an ordinary account book containing charges against his children as his debtors, but as a memorandum of personal property, etc., received by each of them by way of advancement, and to be accounted for as such in final settlement and distribution of his estate.

From the language employed by testator in the clause of his will above quoted where he speaks of money advanced to his children, notes held by him, etc., we would naturally expect to find, among his private papers, not only the notes to which he refers, but also some statement or memorandum evidencing the several amounts referred to and intended to be taken into consideration, as advancements, in carrying out his scheme of distribution. As to the notes, there is of course no question; and, in view of all the circumstances, we think it is sufficiently clear that the family book was intended to show the several amounts to which he refers as having been received by his children in the nature of advancements, either in money or property at the cash value affixed thereto. We are therefore of opinion that the book should be resorted to for that purpose. If it is found to contain any entries that are manifest errors or mistakes they should be corrected. The respective entries under date of April 1, 1880, purporting to be footings of each account to that date, appear to be unintelligible, and should be disregarded unless explained to the satisfaction of the court below.

Decree reversed and record remitted to the Orphans' Court, with instructions to proceed in accordance with the foregoing opinion. Costs of this appeal to be paid by the appellees.