## Laughlin Estate.

Argued November 29, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Joseph V. Somers,* for appellant.

*W. Bradley Ward,* with him *Charles G. Gartling* and *Lemuel B. Schofield,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, April 12, 1946:

These appeals concern the construction of a will. The question is whether testatrix has, by charging debts and advancements against the distributive share of one of her three children, invoked the doctrine of hotchpot. Do the words of the will disclose an intent for an *equal* distribution to all three children? Are the sums so charged against the child's share first to be added to the actual estate, the total divided equally among all three children, and the debts and advancements so charged then to be deducted from the share of the child so charged? Or, do the words of the will express an intent to divide the estate *unequally* among the three children?

The words of the second item of the will, consisting of the residuary clause, which we are required to construe, read as follows:

"SECOND. All the rest, residue and remainder of my estate, real, personal and mixed and wheresoever situate, I give, devise and bequeath as follows:

"To my Trustee, hereinafter named, one third thereof IN TRUST, however, for the uses and purposes as hereinafter set forth for the benefit of my son, GEORGE LAUGHLIN and his family; PROVIDED, however, that inasmuch as my son, GEORGE LAUGHLIN, the beneficiary of this Trust Estate, has received from me during my lifetime sums of money at various times, in excess of amounts given to my other children, I direct that his portion of my estate shall be chargeable as follows:

"First, with an amount equal to the carrying charges, namely, taxes and water rent of my property known as 650 E. Westmoreland Street in the City of Philadelphia, for the term that he has occupied it, approximately eighteen years preceding the date of this my will.

"Second, with an additional amount equal to the taxes and water rent of my said property at 650 E.

Westmoreland Street from the date of this my will, until my decease.

"Third, with any and all sums of money which I may advance to him or to his wife from the date of July 15th, 1937, until my decease, an account of which shall be kept by me.

"And the Trust Estate, as so diminished, I direct my Trustee to administer as follows: To invest, re-invest and keep invested the principal thereof, which shall include my property at 650 E. Westmoreland Street, at a valuation as regards the distribution of my estate, of Four thousand one hundred fifty dollars, and to apply the income therefrom to the support and maintenance of my son, GEORGE LAUGHLIN, and his dependents, in weekly installments of Twenty-five dollars.

"And I do further order and direct that my said Trustee may expend, if in her discretion she may deem it necessary, all the principal and income for the said GEORGE LAUGHLIN, and his dependents; and my said Trustee shall be unrestricted in using her discretion in the expenditure of the principal and weekly payment, and her action in such regard, I direct, shall not be questioned in any way.

"It is my desire, and I so direct, that my son, GEORGE LAUGHLIN, and his wife, MARY E. LAUGHLIN, shall have the privilege of occupying my property at 650 E. Westmoreland Street, which is a part of this Trust, for and during all their natural lives; PROVIDED, however, that should it be deemed best for the interest of this Trust, my said Trustee shall have the authority to sell the said property, applying the proceeds of such sale according to the terms of this Trust, without any liability on the part of the purchaser to see to the application of the purchase money.

"And the remainder of this Trust fund upon the death of my son, GEORGE LAUGHLIN, shall be distributed among his descendants according to the intestate laws of the Commonwealth of Pennsylvania.

"And all the remainder of my said residuary estate, I direct shall be divided equally between my son, HENRY LAUGHLIN and my daughter, STELLA M. SHANNON, their heirs and assigns, absolutely and forever."

The initial inquiry is whether the amounts chargeable against George's share are to be regarded as *advancements;* if so, do the words of the will express an intent *not* to bring such advancements into hotchpot?

An advancement in its strict *technical* sense relates exclusively to cases of intestacy. It is an irrevocable gift by a parent to a child in anticipation of such child's future share of the parent's estate: *Yundt's Appeal,* 13 Pa. 574; *Miller's Appeal,* 31 Pa. 337; Intestate Act of June 7, 1917, P. L. 429, section 22, 20 PS section 135. See 1 R. C. L. p. 653 et seq.; 69 C. J. section 2233, p. 1031 et seq.

In case of *testacy* where the will does not refer to advancements it is considered that the will extinguishes or merges all prior advancements. The law presumes that by making such a will testator disposed of his estate as he desired and with due consideration for the rights of those to whom advancements had been made. See 1 R. C. L. p. 676 et seq.; 69 C. J. section 2233, p. 1031.

The term advancement, however, is also used in a popular or *non-technical* sense, where the will directs that advancements to beneficiaries shall be deducted from their shares. Testator may refer to prior advancements in such a way as to require that they be taken into consideration in the distribution of his estate. Where it is the testator's intention, as shown by the will, to require such charge, deduction or accounting, or otherwise to require the consideration of advancements, such intention will be given effect: *Wagner's Appeal,* 38 Pa. 122; *Mengel's Appeal,* 116 Pa. 292, 9 A. 439; *Eichelberger's Estate,* 135 Pa. 160, 19 A. 1014; *Vilsack's Estate,* 226 Pa. 379, 75 A. 604; *O'Connor v. Flick,* 271 Pa. 249, 114 A. 636; *Gowen's Estate,* 285 Pa. 219, 131 A. 727; see also *Montgomery's Trustee v. Brown,* 134 Ky. 592, 600.

The method of calculation of distributive shares is the same, whether the advancements are in an intestate's estate and are regarded in their strict *technical* sense, or under the terms of a will where they are treated in their popular or *non-technical* sense. Advancements are to be treated as if repayment had been made to the estate, the total divided among the heirs or beneficiaries, and the advancements deducted from the shares of those advanced. The whole is placed in hotchpot, the advancements added and the total divided: *Wagner's Appeal,* supra; *McConomy's Estate,* 170 Pa. 140, 32 A. 608; *Smith Estate,* 350 Pa. 418, 420, 39 A. 2d. 513; *Doverspike's Estate,* 61 Pa. Superior Ct. 318.

The doctrine of hotchpot is of ancient origin. It is a part of the common law. It corresponds in a measure with *collation* in the Civil and Scots law. It constitutes a blending or throwing into a common lot or stock of property for equality of division.

Blackstone (Vol. I, p. *190) states the origin and operation of the doctrine of hotchpot: ". . . if one of the daughters has had an estate given with her in *frankmarriage* by her ancestor, (which we may remember was a species of estates-tail, freely given by a relation for advancement of his kinswoman in marriage,) in this case, if lands descend from the *same* ancestor to her and her sisters in fee-simple, she or her heirs shall have no share of them, unless they will agree to divide the lands so given in frankmarriage in equal proportion with the rest of the lands descending. This mode of division was known in the law of the Lombards . . . With us it is denominated bringing those lands into *hotchpot* which term I shall explain in the very words of Littleton: 'it seemeth that this word *hotchpot,* is in English a pudding; for in a pudding is not commonly put one thing alone, but one thing with other things together.' By this housewifely metaphor our ancestors meant to inform us that the lands, both those given in frankmarriage and those descending in fee-simple, should be mixed and

blended together, and then divided in equal portions among all the daughters."

See also Blackstone, supra, pp. *516, 517. It was the subject of statutory enactment in England as early as the reign of Charles II (22 & 23 Car. 11, 1682-1683). The doctrine rests on the presumed desire of an ancestor to equalize the estate among his heirs, not only as to the property left at the time of his death, but as to all property that came from him, so that one child shall not be preferred to another child in the final settlement of his estate. It has for its object the furtherance of that maxim of equity which declares that equality is equity. See *Miller's Appeal,* supra; *Dutch's Appeal,* 57 Pa. 461. See also: 1 R. C. L. section 3, p. 655 and 18 C. J. p. 912. See also: 26 C. J. S., Descent and Distribution, section 91.

When, however, the will manifests the intention that advances to beneficiaries shall be accounted for, such advances should be treated as advancements are treated in a case of intestacy: *McConomy's Estate,* supra; *Dover-spike's Estate,* supra. See also: 69 C. J. section 2233, p. 1033.

These principles are stated in Page on Wills (Lifetime edition), Vol. 4, section 1557, p. 442: "In deducting advancements, the child must not be required to pay the entire value of the advancement over to the other heirs, since he would have received a share of such property in case of intestacy; and the same principle applies to allowances for advancements under a will, unless testator clearly shows an intention to deprive such devisee of such share in the value. A proper method is to value the amount of the advancements, and the property given by the will, and add them together, and divide this by the number of devisees between whom such advancements are to be taken into account. The amount thus obtained is the amount which each devisee would have received if there had been no advancements, and this amount less the advancements to any devisee is the

amount to which this devisee is entitled. A direction in a codicil that $900 be deducted from the share of A, and the balance paid to A's wife, is not a gift to the six other beneficiaries of $900, but only six-sevenths of nine hundred dollars, since A's share is charged with an advancement in favor of all the beneficiaries including A."

Where, however, testator expresses an intent for *inequality*, the presumption of equality falls: *Davis's Estate*, 346 Pa. 247, 29 A. 2d 700; *Friday's Estate*, 150 Pa. Superior Ct. 352, 28 A. 2d 332. But the expression of an intent of inequality, to overcome the strong presumption of intent of equality, requires plain and unequivocal language to establish it. *Conner's Estate (No. 2)*, 318 Pa. 150, 178 A. 15; *Hirsh's Trust Estate*, 334 Pa. 172, 5 A. 2d 160; *Lochrie's Estate*, 340 Pa. 145, 16 A. 2d 133; *Hogue's Estate*, 135 Pa. Superior Ct. 543, 6 A. 2d 108.

We are, therefore, required to examine the words of the will to ascertain whether they indicate an intent for an *equal* distribution of testatrix's residuary estate, charging advancements, in which event the doctrine of hotchpot must be applied, or whether, in plain and unequivocal language testatrix has expressed an intent for *unequal* distribution among her children.

At the outset it is to be remembered there is a strong *presumption* that in distributing an estate among children testator intends equality: *Hirsh's Trust Estate*, supra; *Hogue's Estate*, supra.

Testatrix has clearly *expressed* her intent for an *equal* distribution among her three children. Her expressed reason for charging George's share with the named advancements was ". . . inasmuch as my son, George . . . has received from me during my lifetime sums of money at various times, in excess of amounts given to my other children. . . ." The will does not disclose what sums of money had been paid to George (in addition to the stipulated advancements) or to the other children. Manifestly this language reveals testatrix's

scheme of equalizing the shares of *all* the children. It demonstrates a clear intent for *equal* division. Furthermore she disposes of her entire residuary estate. She gives "one third thereof" in trust for George and directs the remainder to be "divided equally" between her other two children. This is an equal division, one third to each of her three children. Testatrix specifies the advancements which are to be charged against George's share. It is true that she does not specifically direct that the amounts of the advancements be first added to her residuary estate before division. But such direction is not essential to comply with her plain intent for equal distribution. The law does this for her. We do not entertain the slightest doubt as to testatrix's presumed and expressed intent as to equality, for the reasons and under the cases above cited. Any intent of *inequality* must be established by plain and unequivocal language, which is not found in this will. If the amounts of the advancements are first added to the estate before division, as they should have been, then testatrix's language in charging George's share, and which share "as so diminished", is to constitute the trust, is in strict accord with the hotchpot doctrine. She directs no more than what the law already provides. The words of the will clearly express an intent for an *equal* distribution among her children. An unequal distribution is unwarranted by the language of the will. The doctrine of hotchpot should have been applied.

The decree of the Superior Court is reversed and the record remitted with the direction that distribution be made in accordance with the adjudication and schedule of distribution. Costs to be paid from the estate.

---

DISSENTING OPINION BY MR. JUSTICE DREW:

I cannot agree with the opinion of the Court. I am certain it was error to apply the doctrine of hotchpot in distributing this estate.

There is involved construction of a part of Section Two of the will of Teresa Laughlin, who died in Philadelphia, on January 16, 1941, leaving three children to participate in the distribution of her estate.

The learned auditing judge, in his adjudication and decree nisi, applied the doctrine of hotchpot as the method of distribution. This was objected to by two of the children, and in passing on their exceptions the six judges of the Orphans' Court of Philadelphia County were evenly divided regarding application of that doctrine. This resulted in affirmance of the decree of the auditing judge, whereupon separate appeals were taken to the Superior Court, which reversed unanimously, holding that that doctrine has no place in this case. From the judgment of that court we granted these appeals.

The first impression gained from reading the will of Teresa Laughlin is that it was carefully prepared by a lawyer. It is dated December 28, 1937, and after providing for the payment of her debts and funeral expenses, says:

"SECOND. All the rest, residue and remainder of my estate, real, personal and mixed and wheresoever situate, I give, devise and bequeath as follows:

"To my Trustee, hereinafter named, one third thereof IN TRUST, however, for the uses and purposes as hereinafter set forth for the benefit of my son, GEORGE LAUGHLIN and his family; PROVIDED, however, that inasmuch as my son, GEORGE LAUGHLIN, the beneficiary of this Trust Estate, has received from me during my lifetime sums of money at various times, in excess of amounts given to my other children, I direct that his portion of my estate shall be chargeable as follows:"

She then specified in three paragraphs the charges she wished made against the portion received by George.

(1) An amount equal to the carrying charges, taxes and water rents, which she had paid for him while he and his family for twenty-three years occupied without any

charge a house owned by her, (2) An amount equal to the taxes and water rents on the same property from the date of her will until her death, and (3) with any sums of money which she may advance to him until her death.

Having so precisely named the charges to be made against the share received by George, she said: "And the Trust Estate, *as so diminished,* I direct my Trustee to administer as follows :" She then provided for investment of principal, which should include the house occupied by George, and the income to be applied for the support of George and his dependents, in weekly installments of twenty-five dollars.

The next paragraph authorizes the trustee in her discretion to spend all the principal and income on George and his dependents. She then provides that George and his wife shall have the privilege of occupying her house "for and during all their natural lives." And next, that at George's death "the remainder of this Trust fund . . . shall be distributed among his descendants according to the intestate laws of the Commonwealth of Pennsylvania." Then follows this final paragraph of the residuary section :

"And all the remainder of my said residuary estate, I direct shall be divided equally between my son, HENRY LAUGHLIN and my daughter, STELLA M. SHANNON, their heirs and assigns, absolutely and forever."

Henry and Stella were appointed executors, and Stella was also appointed trustee.

At the audit it was agreed that the amount directed by the will to be charged against the portion of the estate received by George was $9,533.09, and the question arose as to how it should be distributed. In his adjudication the auditing judge held that the doctrine of hotchpot applied and ruled that "distribution will be awarded hereunder by treating the advancement as if repayment had been made to the estate, the total then divided in equal one-third shares, and the advancement deducted from the share given in trust for the benefit of George

Laughlin and his family." He added the charge against the share of George to the balance for distribution and then divided that balance in three parts. From one of such parts he deducted the charge against George and awarded the balance in trust for George. The other parts were awarded to Henry Laughlin and Stella M. Shannon. Instead of receiving the entire charge against George's share, they were given only two-thirds of it. Their claim for the remaining one-third in equal shares was denied. The net effect of this method of distribution was to release George from payment of one-third of the charge which his mother directed be made against his share, or $3,177.70, and his brother and sister were deprived of this amount.

The learned auditing judge concluded that testatrix did not clearly express the method of distribution she had in mind, and because of uncertainty inequality resulted, and since the law favors equality, and because an heir is not to be disinherited except by plain words or necessary implication, he applied the doctrine of hotchpot which makes for general equality. With his conclusion I cannot possibly agree.

It seems to me the doctrine of hotchpot is entirely inapplicable in this case. Testatrix herself determined that when in clear and unmistakable language, with no confusion of thought, she precisely declared in her will how she wished her estate distributed among her children. No canons of construction are necessary to determine her meaning: *Conner's Estate,* 286 Pa. 382, 388, 133 A. 545.

Hotchpot is an equitable doctrine intended to bring about equality among heirs. It is a method of distribution by which advancements made to heirs during an intestate's lifetime are treated as if actually repaid to the estate and the total estate, as thus *augmented,* divided among the heirs, the amount of the advancements being deducted from the share of the one advanced.

We recently said in *Smith Estate,* 350 Pa. 418, 419, 39 A. 2d 513: "An advancement as defined by this Court is a pure and irrevocable gift, by a parent in his lifetime, to his child, on account of such child's share of the estate, after the parent's decease: Miller's Appeal, 31 Pa. 337; Long's Estate, 254 Pa. 370, 98 A. 1066; Harrison's Estate, 298 Pa. 514, 148 A. 704." Advancements are confined to cases of intestacy except in the event of a will which clearly expresses otherwise or where the donor has died intestate as to part of his property: *O'Connor v. Flick,* 271 Pa. 249, 253, 114 A. 636; *Loesch's Estate,* 322 Pa. 105, 109, 185 A. 191. Here, therefore, we must look to the will to determine if the doctrine is applicable. The intent of the testatrix, as expressed in her will, must be respected as controlling: *Grothe's Estate,* 229 Pa. 186, 190, 78 A. 88. It is not our business to rewrite her will or to speculate as to why she preferred her method of distribution. It is our duty to give effect to her intention. To ignore her clearly expressed intention is to make a will for her, and one which she would reject if not powerless to do so. The law does not require her to express any reason for her scheme of distribution. It is sufficient if she express a clear intention of what is to be done with her estate. "If his language is clear it constitutes its own decree of distribution": *Hogg's Estate,* 329 Pa. 163, 166, 196 A. 503, 504.

Anyone reading this testament will be struck by the concern of testatrix for her son George and his family. Almost the whole will is taken up by consideration of them—past, present and future. Only a few lines are given to the other children. For some reason, not expressed, this mother gave preferred treatment to George, for at least twenty-three years prior to her death. This is proven by the fact that during all that long period she gave him a house to live in and herself paid the taxes and water rents; and during the same period she gave him various sums of money; the result being that when she died he owed her $9,533.09, almost twenty-five percent

of the total value of her $40,000 estate. It is undisputed that she did not do anything similar for her other children, although not anything indicates a lack of affection for them. It is also clear that testatrix had a strong feeling that she should not prefer one child over the other, and to prevent inequality she provided that the share given George should be "diminished" by the amount he had received in excess of that given the other children.

With the intention to distribute her estate the way she did, we cannot imagine how she better could have done so. If she had wished George to participate in the residue she could have so declared in very few words. It was much more difficult to order the distribution she did than to simply name him with the other children as an equal beneficiary of the residue. Her language is clear and unambiguous; her plan of distribution is sensible and her own; it cannot be fairly said she made any distinction between her children.

In considering this case it seems to have been generally overlooked that while testatrix said in her will that George "has received from me during my lifetime sums of money at various times in excess of amounts given to my other children" she made no charge against his portion of her estate for those sums of money. She only charged against him the carrying charges of the property and "any sums of money which I may advance to him from July 15, 1937, until my decease, an account of which shall be kept by me." It is apparent that during the many years he occupied the house without charge he received in cash sums of money in excess of what the other children received. He was not asked to repay them. Because of this it is unjust to say that George did not get as large a share of his mother's estate as did his brother and sister. The truth is he received more than either. And now by the decision in this case he is released from paying one-third ($3,177.70) of the charge which his mother specifically and in the plainest lan-

guage directed be charged against his share, and his brother and sister are thus deprived of that amount. I think it was error to apply the doctrine of hotchpot in distributing this estate.

In support of the plan of distribution adopted by the learned auditing judge, there is cited *Wagner's Appeal,* 38 Pa. 122; *McConomy's Estate,* 170 Pa. 140, 32 A. 608, and *Doverspike's Estate,* 61 Pa. Superior Ct. 318, but an examination of those cases shows that there the testators, by express language, directed an equal division of their assets.

I would affirm the decree of the Superior Court.

Chief Justice MAXEY joins in this dissent.