490 A.2d 868

**In re ESTATE OF Corvan S. BRYAN.**

**Appeal of Marian Flynn GULDEN.**

Superior Court of Pennsylvania.

Argued Nov. 8, 1984.

Filed March 22, 1985.

Reargument Denied June 4, 1985.

456

Larry W. Wolf, Hanover, for appellant.

Robert G. Teeter, Assistant District Attorney, Gettysburg, for appellee.

Before WICKERSHAM, DEL SOLE and POPOVICH, JJ.

DEL SOLE, Judge:

The instant appeal is from a final decree of distribution of an estate. At issue is an auditor's characterization, confirmed by the orphans' court below, of certain transactions as distributions of the estate to an heir which had the effect of denying that heir any share of final distribution. Also at issue is the claim that the settlement of the estate was unreasonably delayed. For the following reasons, the de-

cree of the orphans' court is affirmed in part and reversed in part.

The procedural history of the instant case is as follows: On September 22, 1972, Corvan S. Bryan died intestate leaving a widow and one child, a daughter. On September 29, 1972, letters of administration were granted to the decedent's widow, Appellee Marian Bryan. The Appellant, Marian Flynn Gulden, is the daughter of the decedent and Appellee. Following the grant of letters, there was little activity on the estate docket until the spring of 1979.

On April 12, 1979, Appellant petitioned the orphans' court to force Appellee to file an accounting. On July 9, 1979, the court ordered Appellee to file a first and final accounting within ten days. However, it was not until January 20, 1982, that Appellee filed the first and final accounting together with a proposed schedule of final distribution. Timely exceptions to the accounting were filed by Appellant and an auditor was appointed. After an evidentiary hearing, the auditor issued a report on April 13, 1983, to which Appellant renewed her exceptions. On December 1, 1983, the orphans' court dismissed Appellant's exceptions and entered a final decree confirming the auditor's proposed schedule of final distribution. This timely appeal followed.

There are three transactions in dispute. First, on April 1, 1975, Appellant, Appellant's former husband, James Flynn, and Appellee executed a demand note to the First National Bank & Trust Company of Waynesboro for $11,000. Appellee, as administratrix, agreed to secure the note with estate assets, specifically certain shares of stock in a water company. The second transaction occurred the next day, on April 2, 1975, when the same three persons executed a demand note for $15,000 to the Adams County National Bank which note was secured by Appellee's personal savings account. The purpose for the above described loans was to provide Appellant and her former husband with cash for a down payment on the purchase of a bar. The remainder of the financing for the purchase of the bar was obtained through

a mortgage loan agreement with the First National Bank & Trust Company on which Appellee was not an obligor.

Shortly after the consummation of the above demand note transactions, the Adams County National Bank made a demand or payment which was made on June 19, 1975 from Appellee's personal savings account in the amount of $15,-028.12. Nearly two years later, the First National Bank & Trust Company demanded payment on its note which was made on March 4, 1977 in the amount of $11,208.12. The payment of this note was made from a savings account in Appellee's name which consisted entirely of a portion of the proceeds from the sale of the estate's water company stock. The savings account had been substituted as security for the note when the water company stock was sold in July, 1976. Shortly after the payment on the $15,000 note, Appellant and her former husband found themselves in arrears on the bar mortgage which was foreclosed upon just before Thanksgiving, 1977.

The third transaction in dispute concerns a payment by Appellee of $2,500 from her personal funds to Appellant so that Appellant could purchase new clothes because Appellant's daughter had allegedly taken all of Appellant's clothes without her consent. This situation was related to marital and family difficulties between Appellant and her former husband which resulted in separation in June, 1978, and eventual divorce in 1979. Appellant was residing with her mother, the Appellee, at the time of the $2,500 payment.

When Appellee filed the first and final accounting and proposed schedule of distribution she listed the payment of the demand notes and the payment of $2,500 as distributions of the estate to Appellant. Those amounts were set off from the share of final distribution Appellant would have otherwise received. Appellee's basic contention is that Appellant had agreed that any monies paid on the demand notes and the $2,500 payment would be "taken out" of Appellant's share of final distribution of the estate. Conversely, Appellant contends that she at no time agreed that the amounts paid on the notes or the $2,500 would be

deducted from her share of final distribution. In addition, Appellant argues that any monies paid by Appellee were from her personal funds and as such any obligation of Appellant or her former husband for repayment would be to Appellee personally and not to the Appellee in her capacity as administratrix. Accordingly, Appellant contends that Appellee must institute separate legal proceedings to recover any monies owed and may not set off the personal obligations from Appellant's estate share.

Before addressing the merits of the instant appeal, we note the following. First, the parties to the instant appeal have referred to the transactions in question alternatively as distributions or advancements. However, the two terms are not synonomous. An advancement is an irrevocable gift made by a parent, during his or her lifetime, to a child in anticipation of that child's future share in the estate. *In re: Morris' Estate,* 356 Pa. 497, 52 A.2d 172 (1947); *In re: McLaughlin's Estate,* 345 Pa. 43, 46 A.2d 477 (1946). Since the transactions occurred long after the intestate's death, any monies that were paid from the estate were not advancements, but rather distributions or disbursements. Second, it is well-settled that the findings of fact of an auditor, confirmed or approved by the orphans' court will not be disturbed on appeal except in cases of clear error or if the findings are unsupported by the evidence. *In re: Watt's Estate,* 409 Pa. 44, 185 A.2d 781 (1962). Finally, in order to claim credit for any disbursement of estate funds the fiduciary has the burden to prove such disbursements through evidence other than the fiduciary's unsupported testimony which alone is generally insufficient. *In re: Strickler's Estate,* 354 Pa. 276, 47 A.2d 134 (1946). However, a fiduciary may not set off individual claims against a distributee and the orphans' court may not as a matter of law decree such a set off. *In re: Wentz's Estate,* 225 Pa. 566, 74 A. 424 (1909).

The critical fact in the instant appeal is the source of both the funds paid on the demand notes and the $2,500 payment. A close review of the record reveals that the only

transaction directly linked to the payment of estate funds was the payment of $11,208.12 on the note to the First National Bank & Trust Company. In that transaction, the estate water company stock had originally been pledged as security and was later replaced by a savings account consisting solely of a portion of the proceeds from the sale of the stock. This was the account from which payment on the note was made. In addition, the payment of the note from this savings account of estate funds conferred a benefit upon Appellant in relieving her of a legal obligation. Thus, there is then sufficient evidence in the record to support the auditor's finding that the payment of the note constituted a distribution of the estate to Appellant which the fiduciary could properly set off from her share of final distribution.

■ The same cannot be said, however, for the payment of the $15,000 note. The record is clear that the $15,000 note to the Adams County National Bank was secured by a savings account consisting of Appellee's personal funds and that the payment of $15,028.12 was made directly from that account. At no time were funds of the estate directly involved. As to the payment of the $15,000 note, Appellee contends that Appellant executed a writing in which she agreed that the payment of both the $11,000 and $15,000 notes could be credited against Appellant's estate share. This writing was entered into evidence at the auditor's hearing and was relied upon by the auditor in reaching his conclusion that the payment of the demand notes were distributions of the estate to Appellant. In addition to this writing, the auditor also found Appellee to be the more credible witness. However, a review of the record reveals that the writing is not signed by anyone and that Appellant testified at the auditor's hearing she had neither drafted nor ever seen the writing. Given these facts, it was error for the auditor to admit the writing and base his findings on it. Absent the writing, the only remaining evidence on the issue of the distributions is the conflicting testimony of Appellant and Appellee. As we have already noted the

unsupported testimony of the fiduciary is insufficient to sustain a claim of credit for distributions made by the fiduciary. This together with the fact that the funds used to pay the $15,000 demand note were from Appellee's personal savings account compels us to find that the auditor erred in finding that Appellee could set off the amount from Appellant's share of final distribution. This is in contrast to the payment of the $11,000 note which was directly traceable to estate funds thus establishing sufficient evidence to support a finding of distribution to Appellant.

■ For the same reasons, we also find that the auditor erred in permitting the $2,500 set off from Appellant's estate share. The only difference between this and the payment of the $15,000 note is that there was never even any purported writing to support Appellee's claim. Appellee merely testified that Appellant had agreed to let Appellee take it out of Appellant's share of the estate. Appellee acknowledged receiving the money but denied that she agreed to let Appellee deduct the money owed from her estate share. Since the $2,500 came from the Appellee's personal funds and there is no evidence other than Appellee's testimony to support her claim, we must reverse the finding that such payment was a distribution of the estate of the Appellant.

■ Finally, Appellant raises the issue that the settlement of her father's estate was unreasonably delayed after July, 1976. However, we need not explore the merits of this issue in detail. In her brief, Appellant raises the issue of unreasonable delay in the settlement of the estate but fails to include a discussion of the issue in her summary of argument or argument. The auditor concluded that the settlement of the estate had been unduly delayed after July, 1976, but that Appellant had not been prejudiced by the delay. Our review of the record fails to show any prejudice to Appellant attributable to the delay, nor has she given us any reason to reverse the auditor's finding. For this reason, and the other foregoing reasons, the final decree of distribution of the orphans' court is affirmed in part and

reversed in part and the case is remanded to the orphans' court for entry of a final decree of distribution consistent with this opinion.

Decree affirmed in part and reversed in part. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.