# Wagner's Appeal.—(Duval's Estate.)

*Advancements in Real Estate.— Construction of Devise.—Distribution*
*among advanced Heirs.*

A testator directed by will an equal distribution of his estate among his children, the sums of money advanced to each first being deducted, and giving absolute discretion to ascertain and settle the charge against each according to his books and papers, to his wife, who charged one of his daughters with the value of a house and lot conveyed by him to her trustee for the consideration of one dollar, though no books or papers were produced to warrant it. *Held,* by the court,

1. That the charge was authorized, as within the absolute discretion given by the testator to his wife, whose duty it was to act upon evidence, and that there was nothing in the subject-matter or in the form of the advancement in conflict with the presumption that the charge was correctly ascertained and settled.

2. That the deed in the name of the daughter, though it was not money, and was for life only, with remainder to her children, was an advancement and not a gift.

3. That the distribution made, by dividing the estimated residue into the required number of shares, and apportioning the sum of money in hand to those who had received least, until the shares were equalized, rejecting as part of the residue of the estate, the excess above his share advanced to one of the children, accorded with the intention of the testator, though it did not produce absolute equality in the distribution of the estate.

APPEAL from the Orphans' Court of *Philadelphia county*.

This was an appeal by Samuel Wagner, as trustee of his wife Emily and children, from the decree of the Orphans' Court, distributing the estate of James S. Duval, deceased, in the hands of Samuel Wagner and George B. Rodney, who were surviving trustees under the will of said deceased. James S. Duval died in 1842, having first made his will, dated March 18th 1842, and a codicil thereto, dated March 22d 1842, which were proved at Philadelphia, April 19th 1842. By the codicil he devised the residue of his real estate to Lewis Duval, since deceased, and the accountants in fee, in trust, with power to sell, "and the net proceeds" he directed "to be first applied in payment of any of my debts, to which the same may be subject, and is not otherwise provided for, and the surplus of such purchase-money to be distributed by the said trustees, to and among my several children who may be living, and to the issue of such as may have died, in shares according to the number of those living and those who have died leaving issue, equally, having reference to the sums of money which from time to time I have advanced to any of my said children, and which I direct shall be in the first place deducted from the shares of each child or his issue, before he, she, or they shall be entitled to any portion or distributive share of the proceeds of the sale of said real estate hereby directed to be

made:" adding, " And it is further my will, that my wife, Catharine Duval, shall, in her lifetime, ascertain and settle the sums to be charged to my several children, or against the issue of those who may have or shall die leaving issue, my said wife being for this purpose invested with absolute discretion, according to such evidence as she may have in my books and papers.".

The widow as executrix made a statement of the accounts of the several children, among which there was one against her daughter, Mrs. Emily Wagner, which contained several charges as advancements. Objection was made before the auditor to one item of $14,000, for the value of a house and lot in Arch street, which had been conveyed to Frederick Beates, on the 30th of August 1826, in trust for the use of Mrs. Wagner for life, and at her decease to her children in fee, with a contingent life estate to her husband, Samuel Wagner.

The widow asserted that she had found in her husband's books or papers this charge against her daughter Emily, but the books or papers were not produced before the auditor. The index to one of the books of deceased, containing charges against his children, contained the name of Emily; but the page to which it referred was torn out. The position taken before the auditor was, that the conveyance of this property was a gift to Mrs. Wagner, and not an advancement, and that there was nothing in the evidence to rebut this presumption.

. The auditor allowed the charge to stand, which was the subject of the first exception to his report by the trustee of Mrs. Wagner. He then distributed the balance in the hands of the accountant in this way. Adding to the cash in hand for distribution the amounts theretofore received by the several children, he divided the aggregate by nine (this being the number of the heirs), and then from the share of each, thus ascertained, he deducted his advancement in every case where the advancement had not been greater than the share; which distribution was the subject of the second exception to his report.

On argument the Orphans' Court confirmed the auditor's report, so far as it related to the allowance of the charge of $14,000, but reversed his mode of distribution; and made a decree, by which only the four children who had received least from their father, were allowed to participate in the distribution, excluding Mrs. Wagner from any portion of the balance, which was done by estimating the actual amount received as residue, and dividing it into the requisite number of shares, and then apportioning the sum in hand to those who have received least, until the shares were equalized. The sum advanced to one of the children, over and above his share, was rejected as part of the residue of the estate, so far as the calculation of the interests

of the several heirs was concerned; which decree was assigned for error here.

*G. M. Wharton*, for appellant.—The direction in the will of Mr. Duval was, to charge the "sums of money" which the testator had "advanced" to any of his children, and not the value of any other thing. The house in Arch street was conveyed to a trustee by a deed, which was on its face a voluntary transfer, operating by way of gift to her and her children, being without value received, and was in no sense a "sum of money advanced." Mrs. Duval's power to charge the children with advancement was limited to the evidence found in testator's books and papers. She had no general discretion outside of this evidence, and no power to treat this deed as one of his books or papers. There was no book charge against Mrs. Wagner, and the mutilated book had never been in her possession. In order to sustain this charge, Mrs. Duval must prove her authority. There is no legal presumption in her favour, as in case of public officers. Beside, this conveyance was to Mrs. Wagner for life only, while the advancement contemplated by the testator must have been one of which the children had received the entire benefit.

2. As to the decree of distribution, the plan adopted by the Orphans' Court was not as equitable as that of the auditor, which apportioned the fund in the ratio of the amount needed by each to make up his full share. It was necessary to treat the sums advanced as parts of the entire estate, in order to ascertain the proportion of the whole to which each child was entitled. This would show whether any had received his full share or not, would exclude all who had, and give to the others more or less, as their advancements had been greater or smaller; citing in support of these positions, Hengst's Estate, 6 Watts 87; Yundt's Appeal, 1 Harris 575; 4 Kent 418; Green *v.* Howell, 6 W. & S. 208; Co. Litt. 176 b.

*G. Morgan Eldridge* and *William L. Hirst*, for appellee.— 1. As to the charge of $14,000. The testator invested his widow with "absolute discretion, according to such evidence as she might have in his books and papers, to ascertain and settle the sums to be charged to his several children," not "sums of money" advanced; and that both the general understanding and his books and papers included things other than money, appears from the fact that the other children are charged, as well with goods and property, as with money.

The house advanced to Mrs. Wagner was conveyed on nearly the same uses as the special devise, except that upon the death of her husband, and failure of issue, she takes a fee in the advanced property, and only a life estate in the devise.

The books and papers of the testator, after a lapse of seventeen years are somewhat dilapidated, but the index to the account-book showed that there had been charges against Mrs. Wagner, and the presumption would rather be, that Mrs. Duval acted honestly, and transcribed charges which were there at the time, than that she committed a fraud upon a daughter, between whom and herself the most affectionate relations had always existed.    The book in the index of which, as the auditor reports, Mrs. Wagner's name occurs, her account being torn out, contains charges against the other children.    What other books and papers then existed, no one can tell, but the intention of the testator was clearly to prevent all question or litigation among his children as to their advancements, and to invest his widow with "absolute discretion" upon the subject, without appeal or reference.

2. As to the mode of distribution.    The intention of the testator was to equalize, as near as might be, the sum of advances and distributions to all his children, or, as the auditor says, "by analogy to the Statute of Distribution, wherein he who has received his share is to receive no part of the fund, until the others who have not received their shares be made equal to him."    This is by no means accomplished by the auditor's schedule, but is, by the mode adopted by the Orphans' Court, which brings the first up to the second; those two to the third, and so on as far as the fund goes; and gradually reaching from one to the other as the remainder of the estate is disposed of and the fund brought in.    The testator says, "having reference to the sums of money which from time to time I have advanced to any of my said children, and *which I direct shall be in the first place deducted from the shares of each child, or his issue, before he, she, or they shall be entitled to any portion or distributive share of the proceeds.*"

The opinion of the court was delivered, January 17th 1861, by

STRONG, J.—The solution of both the questions raised by this appeal depends upon the intention of James S. Duval, deceased, as expressed in his will.    It appears that during his life, he had made very unequal advancements to his children, and had kept a book, in which he had charged each child with the property advanced.    By his will he directed the residue of his estate, after the death of his widow, and the determination of her life interest, to be distributed among his several children who might be living, and the issue of such as might have died, in shares, according to the number of those living and those who might have died leaving issue, *equally*, having reference to the sums of money which he had advanced to any of his said children, from time to time, and which he directed, in the first place, to be de-

ducted from the shares of each child or his issue, before he, she, or they should be entitled to any portion or distributive share. The testator then directed the mode by which the amount to be charged to each distributee should be determined. He directed his wife, Catharine Duval, in her lifetime, to ascertain and settle the sums to be charged to his several children, or against the issue of those who might have died or should die leaving issue, adding, to use his own language, " my (his) said wife being for this purpose invested with absolute discretion, according to such evidence as she may have in my (his) books and papers."

In pursuance of the power and absolute discretion thus vested in her, Mrs. Duval determined the sum to be charged to Mrs. Emily Wagner, one of the daughters, to be $16,000, of which $14,000 were for house in Arch street, which the testator had conveyed for the nominal consideration of one dollar to Frederick Beates, in trust for the sole and separate use of Mrs. Wagner, for life, remainder to her husband for life, remainder to her children and their issue (the latter to take representatively), and their heirs in equal part, and in default of such children or issue, then to the use of the right heirs of the usee for life.

The appellant now contends that this charge was unauthorized, because, first, no books or papers of the testator are shown which warrant it; secondly, because the deed itself is presumptive evidence that the conveyance was a gift, and not an advancement; and thirdly, because it was not money. The family book of the testator is mutilated. That there was an account in it against Mrs. Wagner is evident from the index, but the leaves which contained it are torn out and lost. That the house in Arch street was conveyed, however, and that it was of the value conveyed, is not denied; but it is said that Mrs. Duval had no power to determine it to be a charge against Mrs. Wagner's distributive share, unless the books and papers show that such a charge existed in them, and that it must affirmatively appear that the books and papers did contain it. We do not think so. She had *absolute discretion* to ascertain *and settle* the charge. True, it was to be done " according to the books and papers," but she was to determine what was in those books and papers, and what the evidence established. The only imaginable purpose of the testator in conferring upon her this power, was to save the necessity of referring to the books and papers. Under the peculiar terms by which the power was given to her, it ought to be presumed that she did not act without evidence, and falsely to her trust. The burden of showing that she was mistaken would be upon those distributees who assert an error in her settlement. It is, to say the least, far from being clear that the deed itself, instead of raising a presumption that the transaction was a gift, did not make out a *primâ facie* case of advancement;

and if so, it was confirmatory of the settlement of Mrs. Duval. Generally, when a father makes a conveyance in the name of a child, it is held to be an advancement; and in Hatch v. Straight, 3 Conn. 31, it was ruled that a deed from a father to a son, in consideration of love and affection, is presumed to be an advancement, and the presumption will not be rebutted by an additional nominal consideration of five dollars. The value of the property conveyed in this case ($14,000) is also cogent evidence that an advancement, and not a gift, was intended: 6 Whar. 373. That it was advanced in land and not in money, is a matter of no consequence. In one part of the will the testator speaks of money advanced, in another of the amount to be charged. It is too obvious for question, that the intention was to give equitable advantages to his children, as far as possible, and that the settlement of the house was upon Mrs. Wagner for life, with remainder to her children, is also unimportant. Such a settlement is regarded as an advancement under our intestate laws, as it was in England under the statutes of 22 and 23 Charles 2, ch. 10. Besides, the testator looked beyond his immediate children, and manifested an intent to maintain the equality of each branch of his descendants. We hold, therefore, that there is nothing either in subject-matter or the form of the advancement to Mrs. Wagner in conflict with the presumption that Mrs. Duval correctly ascertained and settled the sum to be charged to the appellant.

We are also of opinion that the other exception is without foundation. The mode of distribution, approved by the court below, accords with the evident intention of the testator, manifest in his will. That children advanced must have an advantage over those who have not been advanced is unavoidable, even when the advancements are brought into hotchpot. But the provisions of the will of Mr. Duval look to equalization as far as possible. The distribution directed by it is to be an equal one, having reference to the sums advanced, which are to be deducted before those advanced shall receive any portion or share. This is the mode designated in order to produce proximate equality, the testator's paramount intent. The mode for which the appellant contends, instead of diminishing the inequality, would increase it.

We dismiss both the exceptions made against the decree of the Orphans' Court, and affirm the distribution ordered—the costs of this appeal to be paid by the appellant.