# Thomas's Election.

*Election law—Contested election—Probable cause—Costs—Act of April 28, 1899, P. L. 118.*

The act of April 28, 1899, imposing costs upon contestants in election cases where the contest has failed, whether probable cause has been shown or not, is prospective in its operation, and does not apply to contests pending at the date of the passage of the act.

*Statutes—Prospective operation—Legislative intent.*

Statutes must be construed as prospective in every instance, except where the legislative intent that they shall act retrospectively is expressed in clear and unambiguous terms, or such intent is necessarily implied from the language of the statute, which would be inoperative otherwise than retrospectively. If the intention of the legislature be doubtful and not clear, a construction will be put upon the statute that renders it most consonant to equity and least inconvenient.

If a statute is open to two interpretations, the presumption is that the legislature intended the most reasonable and beneficial interpretation to be placed upon it. If possible, it will not be construed so as to work manifest injustice.

Argued Feb. 26, 1901. Appeal, No. 56, Jan. T., 1901, by Jacob Jurkovitz, from order of Q. S. Lackawanna Co., April T., 1899, No. 373, imposing costs in the matter of Contested Election of W. H. Thomas, Constable of the Eighth Ward of

the City of Scranton. Before McCollum, C. J., Mitchell, Brown, Mestrezat and Potter, JJ. Reversed.

Rule to show cause why costs in an election contest should not be paid by the city of Scranton.

The facts are fully stated in the opinion of the Supreme Court.

*Error assigned* was order discharging rule.

*W. H. Jessup*, of *Jessup & Jessup*, for appellant.—The act of April 28, 1899 is prospective in its operation: Bedford v. Schilling, 4 S. & R. 400; Underwood v. Lilly, 10 S. & R. 97; Baker v. Bartlett, 9 Wendell, 494; Skinner v. Watson, 35 Conn. 124; Musser v. Good, 11 S. & R. 247; Grim v. Weissenberg School District, 57 Pa. 433.

If the act is retrospective, it is unconstitutional: Philadelphia v. Scott, 81 Pa. 80; Lane v. Nelson, 79 Pa. 407; Baggs's App., 43 Pa. 512; South & North Alabama R. R. Co. v. Morris, 65 Ala. 193; Menges v. Dentler, 33 Pa. 495; Craig v. Kline, 65 Pa. 399.

The law is ex post facto: Madison & Indianapolis R. R. Co. v. Whiteneck, 8 Ind. 217; Wilson v. Ohio & Miss. Ry. Co., 64 Ill. 542; Burgess v. Salmon, 97 U. S. 381; Cummings v. State of Missouri, 4 Wallace, 277; United States v. Hughes, 26 Fed. Cases, 414; Falconer & Higgens v. Campbell, 2 McLean, 195.

*A. A. Vosburg*, city solicitor, with him *D. J. Davis*, assistant city solicitor, for appellee.—There is nothing in the constitutional provision which prevents the passage of a retrospective statute, and it has been held that such a statute is not necessarily unconstitutional: Beck v. Boro. of Bethlehem, 3 Lancaster Law Rev. 386; Hepburn v. Curts, 7 Watts, 300.

It is only legislation which affects vested rights that will not apply to suits pending : Kille v. Reading Iron Works, 134 Pa. 225.

Retrospective laws affecting remedies are constitutional: Bolton v. Johns, 5 Pa. 145; Hinckle v. Riffert, 6 Pa. 196; Evans v. Montgomery, 4 W. & S. 218; Sayers v. Com., 88 Pa. 291; Baltimore & Susquehanna R. R. Co. v. Nesbit, 10 How. 395; Salterlee v. Matthewson, 2 Peters, 413.

The right to costs is not a vested right: Brightly's Law of Costs, 14.

Statutes governing costs are rules of practice, and the costs in a suit are to be regulated by the statute in force at the time of its termination: Billings v. Segar, 11 Mass. 340; Com. v. Cambridge, 4 Metcalf (Mass.), 35; Meigs v. Parke, 1 Morris (Iowa), 379; Jeffery v. Hursh, 58 Mich. 246; Fisher v. Hunter, 15 How. Prac. (N. Y.) 156.

OPINION BY MR. JUSTICE MESTREZAT, March 18, 1901:

The election officers of the eighth ward of the city of Scranton, returned W. H. Thomas as elected constable of said ward over John E. Walsh by a majority of five votes at an election held on February 21, 1899. On March 20, 1899, the petition of the requisite number of the qualified electors of the ward was presented to the court of quarter sessions of Lackawanna county contesting this election. The petition was adjudged sufficient and ordered to be filed, and a rule on the respondent to answer was granted by the court. He obtained a rule to quash the proceedings on April 3, 1899, which was discharged on May 1, 1899, and on May 12, 1899, he filed his answer. The contest was duly proceeded in until August 13, 1900, when the court entered a judgment in favor of the respondent and declared him to have been duly elected to the office. On October 10, 1900, upon the application of the examiner and stenographer appointed to take the testimony in the case, a rule was granted on " the city of Scranton to show cause why probable cause did not exist to justify bringing said contest, and to show cause why the costs should not be paid by the city of Scranton." Without passing on the question of probable cause, the court on January 21, 1901, discharged the rule and directed the petitioners to pay the costs. This appeal is taken from that decree.

The contest was instituted under the provisions of the Act of May 19, 1874, P. L. 210, regulating the trial of contested elections. The 9th section of the act provides as follows : " If the court or judge shall decide that the complaint is without probable cause, the petitioners, and every of them, shall be jointly and severally liable for all the costs ; and the same may be collected as debts of like amount are by law collectible, or pay-

ment thereof may be enforced by attachment. . . . In contested elections of . . . . municipal officers in which the court or judge shall not decide that the complaint is without probable cause, the proper . . . . municipality shall be liable to pay all costs; and the same shall be promptly paid by the proper authorities, upon the order of the court or judge trying the case." During the progress of the contest of this election, to wit: on April 28, 1899, this section of the act was amended so as to read in part as follows: "In contested elections of . . . . municipal officers, . . . . if the contestant or contestants fail to establish his or their right to the office to which he or they claim to have been elected, the petitioners and each and every of them shall be jointly and severally liable for all the costs, and the same may be collected as debts of like amount are by law collectible, or payment thereof may be enforced by attachment. In case the contestant or contestants establish his or their right to the office in either of the above named cases, the costs shall be paid by the proper . . . . municipality."

The learned judge of the court below held that the statute of 1899 was effective from the date of its enactment, and was applicable to proceedings pending at the date of its approval. Under this construction of the act, he imposed the costs of the contest upon the petitioners. The correctness of the decision depends upon the question whether the act of 1899 controlled the disposition of costs in election contests pending at the date it became a law.

In disposing of the question, the court below seems to have assumed that the act of 1899 was effective as to pending cases, and that therefore the costs in this case should be disposed of in conformity with its provisions. Had the learned judge undertaken to support his assumption by an ascertainment of the legislative intent, he would have discovered that the act was prospective and not intended to affect pending litigation. This was practically the effect of his decision refusing to compel the petitioners to file the bond required by the act.

It will be conceded that statutes governing the disposition of costs are regarded as rules of practice, and hence are applicable to litigation pending at the date of their enactment. The legislature may divest the right of a party to his costs by a change in the law relative thereto during the progress of the

litigation. These are well settled principles which are not now open to be controverted. But in determining whether the act of 1899 is applicable to pending litigation, we must have regard to certain well known rules of construction, and by applying them, ascertain the legislative intent in the enactment under consideration.

It is text book law that statutes must be construed as prospective in every instance, except where the legislative intent that they shall act retrospectively is expressed in clear and unambiguous terms, or such intent is necessarily implied from the language of the statute, which would be inoperative otherwise than retrospectively. If the intention of the legislature be doubtful and not clear, a construction will be put upon the statute that renders it most consonant to equity and least inconvenient: Kerlin v. Bull, 1 Dall. 178; Pettit v. Fretz, 33 Pa. 122. If a statute is open to two interpretations, the presumption is that the legislature intended the most reasonable and beneficial interpretation to be placed upon it. If possible, it will not be construed so as to work manifest injustice: Endlich on the Interpretation of Statutes, sec. 258.

The constitution of 1874 imposed upon the court the trial and determination of all contested elections and required the assembly, by a general law, to regulate the manner of trial and all matters incident thereto. It provided, however, that the law regulating the exercise of jurisdiction should not apply to any contest arising out of an election held before its passage. In pursuance of this provision of the constitution and during the year in which it went into effect, the legislature passed the act of May 19, 1874, which, inter alia, regulated the trial of all contested elections. This act, as we have seen, devolved upon the court of quarter sessions or a judge thereof the duty of disposing of the costs in such cases. If the complaint was determined to be without probable cause, the petitioners were made liable for the costs; and if the court or the judge should not so determine, the municipality became liable for them. For a quarter of a century this legislation continued to be the law of the state. Its enactment followed closely upon the heels of the new constitution, and was prompted by the same commendable spirit of protecting the elective franchise and of enforcing its honest results that pervade that instrument. That it was

satisfactory to the electors of the commonwealth and fully met the purposes of its enactment, is established by the many years it remained upon the statute books of the state. The authority thus conferred upon the judges of the courts of quarter sessions was seldom, if ever, abused. The discretion reposed in the court by the act enabled it to impose the costs strictly in accordance with the motives of the contestants. The electors of a district who, in good faith, sought to enforce the sacredness of the ballot and to compel the return of a duly elected officer would not hesitate, under its provisions, to institute a contest to secure these objects. Such have been the conditions which prevailed under this legislation, and its tendency has been to encourage and protect the elector in an honest effort to have the legal result of an election duly ascertained and declared. It is true that on some occasions the machinery of the law thus established has been used by disingenuous parties with dishonest motives, but in such cases the judge of the quarter sessions readily discovered the purpose and imposed the costs upon them as a penalty for their conduct.

Such was the operation of the act of 1874, presumably well known to the petitioners, and such were the results it accomplished. Under the protection it afforded to meritorious contestants, the petitioners began this contest. While the appellee was returned as elected over his opponent by five votes, the petitioners succeeded in showing that twenty-nine illegal votes had been cast for him, thus apparently establishing their sincerity in instituting the proceedings. If the learned judge of the court below had been convinced of their good faith, they would, under the act of 1874, have escaped the payment of the costs, though they did not succeed in having Walsh declared the duly elected constable of the ward. But under the act of 1899, the contest having failed, the court is without discretion in imposing the costs and they fall on the petitioners regardless of their good faith in instituting the proceedings. It is thus apparent that the disposition of the costs under the act of 1899 is different from what the petitioners had reason to believe it would be when they began the proceedings, and that thereby under the facts of the case, manifest injustice will be done them if they are subjected to the provisions of the act of 1899. As we have seen, under the authorities cited, such construction

should not be given to the act of 1899 which will accomplish that result, unless such appears to have been clearly the intention of the legislature.

The 9th section of the act of 1874, amended by the act of 1899, as we have seen, imposes the costs in contested elections upon the petitioners if the contest be unsuccessful, and upon the city, if the contest be successful. The section, however, does not stop here, and its subsequent provisions make it evident that it was intended to operate only upon future contests. In all cases to which the section is applicable, the petitioners are required within ten days after filing their petition, to give a bond " conditioned for the payment of all costs which may accrue in said contested election proceeding, in case the said petitioners by decree of said court shall be adjudged liable to pay said costs, and if the said bond shall not be filed, . . . . the said petition to contest the election shall be dismissed." The penalty thus imposed upon an unsuccessful contestant and the conditions upon which all contests are permitted to be made are different from those of the act of 1874, and are entirely inconsistent with an intention to make the act of 1899 applicable to pending contests. In such cases the petition has been filed and the contest begun and proceeded in prior to the passage of the act. The bond cannot be required of the petitioners, as the learned court below very properly held, and hence the failure to file it would not cause the dismissal of the petition. These requisites of the act of 1899 cannot be enforced in a pending contest.

We are therefore of opinion that the statute itself shows that the intent of the legislature in the enactment was to confine its operation to future contests. If this is not clearly the object, the intention of the legislature in that respect is at least doubtful, and this, according to the rules of interpretation applicable to statutory construction, gives it the like effect as if the purpose of the act was clearly disclosed.

The second assignment of error is sustained, the decree is reversed and a procedendo awarded.