## Hoover's Estate.

*Decedents' estates—Claim of widow to share in husband's estate—Desertion—Act of May 3, 1915, not retrospective.*

1. The Act of May 3, 1915, P. L. 234, is not to be construed to operate retrospectively. The wilful and malicious desertion referred to therein, whether begun prior to the act or after its passage, must continue for a period of one year after the passage of the act.

2. The widow is a competent witness to prove that she had not wilfully and maliciously deserted her husband.

Distribution. O. C. Westmoreland Co., Aug. T., 1922, No. 120.

*Gregg & Gregg,* for estate and widow; *Smith, Best & Horn,* for exceptants.

SNYDER, P. J., Dec. 8, 1922.—The right of Mary A. Hoover Farley, widow of Thomas Hoover, to participate in the distribution of the fund in this estate is disputed by Mrs. Pearl Hoover Hamilton, a daughter of the decedent. This daughter contends that, prior to the death of her husband, Mary A. Hoover Farley for one year and upwards had wilfully and maliciously deserted her husband, and is, therefore, not entitled to share in this estate by virtue of the Act of May 3, 1915, P. L. 234.

The testimony shows that Thomas Hoover and Mary McGinley, now Mary A. Hoover Farley, were married on May 22, 1912, that they lived together as man and wife approximately three months. About Aug. 18, 1912, they separated and never lived together after that time.

Prior to the passage of the said Act of 1915, desertion did not bar a wife from claiming dower. "Dower does not depend on the existence of the family relation at the death of the husband and is not barred by desertion:" Nye's Appeal, 126 Pa. 341.

The Act of May 3, 1915, P. L. 234, provides as follows: "No wife who shall have, for one year or upwards previous to the death of her husband, wilfully and maliciously deserted her husband shall have the right to claim any right or title in his real or personal estate after his decease, under the intestate laws of this Commonwealth."

It is clear that, even though the wife had wilfully and maliciously deserted her husband in 1912, such desertion did not continue for a period of one year after the passage of said act of assembly. We are, therefore, at the very threshhold of this inquiry confronted with the question: Can this statute be construed to operate retrospectively or does it merely operate prospectively?

It is a well settled canon of construction that a statute shall be interpreted so as to operate prospectively and not retrospectively, unless the language is so clear as to preclude all question as to the intent of the legislature.

"It is text-book law that statutes must be construed as prospective in every instance, except where the legislative intent that they shall act retrospectively is expressed in clear and unambiguous terms, or such intent is necessarily implied from the language of the statute, which would be inoperative otherwise than retrospectively:" Thomas's Election, 198 Pa. 546.

There is no evidence whatsoever in the Act of 1915 of an intention on the part of the legislature that it should operate retrospectively. Certainly there is no express provision to that effect, nor is there any such intent apparent in the language used. This rule of construction has frequently been applied to the interpretation of statutes relative to divorce.

"A statute declaring the causes for which divorces may be granted is ordinarily to be given a prospective operation only, and does not authorize a

Hoover's Estate.

divorce for a specific cause which occurred before the statute was enacted:" 14 Cyc., 594.

"In the construction of divorce statutes, the opinion is a reasonable one that a new act shall not be presumed to include previous offences of the kind, so as to justify a divorce in consequence of that which did not justify at the time of its commission, and, hence, it must be shown that the ground existed after the statute. . . . Thus, if desertion for a certain continuous period . . . be made a new cause, the legislative intendment will be that a previous period of desertion shall not be computed:" Schouler on Marriage, etc., 1775.

A statute in the State of Washington provides as follows: "Where the parties are estranged and have lived separate and apart for eight years or more, and the court shall be satisfied that the parties can no longer live together," etc. The Supreme Court of that state said: "No pretension is made in this case that the parties have become estranged and have lived separate and apart eight years since the passage of that amendment. The whole truth is that the parties became estranged and have lived separate and apart for eight years, the greater portion of which necessarily was prior to the enactment of this amendment. . . . An examination of the statutes in relation to divorce does not disclose any indication on the part of the legislature that the act shall have a retrospective effect. It must, therefore, be held not retrospective:" Pierce v. Pierce, 181 Pac. Repr. 24.

"A statute prescribing a new ground for divorce is not retrospective, and, hence, to authorize a divorce thereunder, it must be shown the ground existed after the statute went into effect:" Burt v. Burt (Mass.), 46 N. E. Repr. 622.

To the same effect are Jarvis v. Jarvis, 3 Edward Chancery, 462 (N. Y.); 1 Nelson on Divorce, § 12.

The foregoing authorities on the application of this rule to statutes on divorce have been cited because of the close relationship of the subject-matter to the case in hand and the similarity in the form of the statutes. We can think of no persuasive reason for not applying this rule of construction to the said Act of 1915. There does not seem to have been any case strictly in point in the State of Pennsylvania.

In 1868 a statute was passed in the State of West Virginia which provided as follows: "If a wife voluntarily leaves her husband without such cause as would entitle her to a divorce from the bond of matrimony or from bed and board, and without such cause and of her own free will be living separate and apart from him at the time of his death, she shall be barred of her dower and of her said inheritance." In interpreting this statute, the Supreme Court of that state said: "Did the said amendment for the first time incorporated in the Code of 1868 have a retrospective operation? . . . It is a sound rule of construction that a statute shall have a prospective operation only, unless its terms show clearly a legislative intent that it should have a retrospective operation:" Thornburg v. Thornburg, 18 W. Va. 522, 526.

We are, therefore, of the opinion that the said Act of 1915 was not applicable to the facts in this case. Consequently, a finding of additional facts would not be necessary.

However, even though the statute had been applicable, the evidence would not warrant a finding that the wife had wilfully and maliciously deserted her husband. Under the circumstances, she was a competent witness: Kvist's Estate, 256 Pa. 30.

From her testimony, which is corroborated to a considerable extent by her mother, it is apparent that the wife left the husband only after he had emphatically and with considerable profanity ordered her to go. Leaving his home

3 D. & C.

Hoover's Estate.

under such circumstances would not constitute a wilful and malicious desertion.

"That there was a desertion by the husband may, perhaps, be conceded, but the evidence fails to show that there was a wilful and malicious desertion within the meaning of the act of assembly. While the husband lived apart from his wife, five or six squares away, there is evidence to show that his wife did not want his company, had not spoken to him for two or three years before they separated, and had rented his room in the house to a boarder. Practically he was crowded out of his home:" Graham v. Graham, 153 Pa. 450.

Two letters were introduced in evidence for the purpose of contradicting this testimony of Mrs. Farley, but, on a closer examination, these letters seem to corroborate what she said upon the witness-stand.

For the reasons given, we are of the opinion that Mary A. Hoover Farley is entitled to participate in the distribution of the fund in this estate as surviving spouse of Thomas Hoover, deceased.

From William S. Rial, Greensburg, Pa.