## Rhoads v. United States Asbestos Division, etc., et al.

458

*Domenick Furia,* for plaintiff.
*Windolph & Mueller,* for defendants.

ATLEE, P. J., August 4, 1939.—This is an appeal from the decision of the Workmen's Compensation Board made on March 23, 1939, awarding compensation to Dawson M. Rhoads, claimant, and against the United States Asbestos Division of Raybestos Manhattan, Inc., claimant's employer, and the Pennsylvania Manufacturers' Association Casualty Insurance Company, insurance carrier. Claimant alleged he was suffering from asbestosis incurred while working for the employer.

Eight specific exceptions to the findings of the Workmen's Compensation Board have been filed on behalf of the Pennsylvania Manufacturers' Association Casualty Insurance Company, defendant's insurance carrier and appellant. These exceptions are as follows:

"1. Exception is taken to the finding of fact of the Workmen's Compensation Board and of the referee to the effect that claimant's disability was primarily caused by asbestosis.

"2. Exception is taken to the conclusion of law of the Workmen's Compensation Board and of the referee to the effect that claimant's disability was primarily caused by asbestosis.

"3. Exception is taken to the finding of fact that no partial disability from asbestosis existed prior to January 1, 1938.

"4. Exception is taken to the finding of fact that claimant was not totally disabled prior to January 1, 1938.

"5. Exception is taken to the conclusion of law that, since the findings of fact involves partial disability of claimant from asbestosis prior to January 1, 1938, and total disability therefrom only subsequent to January 1, 1938, claimant is entitled to compensation and an award.

"6. Exception is taken to the failure to clarify the award so that after the 500-week period, provided by the act of assembly, and should liability still continue, then payments should only be assessed against defendant at the rate of $3 per month, which is one tenth of the $30 per month provided by the act of assembly.

"7. Exception is taken to the conclusion of law that the act of assembly, upon which this award is based, is constitutional.

"8. Exception is taken to the failure to clarify the award against defendant to a total liability of one tenth of $3,600, or $360."

The act of assembly whose validity and interpretation are before the court in this appeal is known as the Occupational Disease Compensation Act of July 2, 1937, P. L. 2714, effective January 1, 1938. The act is entitled "A Supplement to the act, approved the second day of June, one thousand nine hundred fifteen (Pamphlet Laws seven hundred thirty-six)", which act is The Workmen's Compensation Act. The supplement is to be known and cited as the "Occupational Disease Compensation Act." The term "occupational disease" is defined in the act. In section 2 (l) "asbestosis" is defined to include:

"Asbestosis in any occupation involving direct contact with, handling of, or exposure to the dust of asbestos."

The opinion of the Workmen's Compensation Board in the present case states the following facts: Dawson M. Rhoads, claimant here, began working for defendant in 1915. He worked as a spinner for about five years, then was out of defendant's employ for a period of six years, and for the last 13 years has worked continuously for the United States Asbestos Division, etc. During this 13-year period claimant worked in what is known as the

"mule spinning department." His duties there were described by him as follows:

"Well, you put the twist into the roving and while those spindles are turning that is what puts a twist in it and that, of course, throws off dust and you inhale it.

"Q. How were the conditions in the room in which you worked?

A. "They were dusty and there was no way to really relieve that dust I don't think because the mule travels about six feet and there is no way to put a hood or anything over it to keep the dust down, so I just have to follow this back and forth and that is how you inhale it."

On January 15, 1938, on the advice of Dr. Hershey, a practicing physician in Manheim, claimant stopped working. Dr. Hershey testified that three years previous claimant had called to see him. At that time claimant had an irritative cough, with loss of strength; the condition gradually got worse and at the beginning of 1938 there developed a pain in the side of claimant. The physician testified that he advised claimant to stop all work. The physician further testified that claimant was totally disabled, "not fit to do anything." Dr. Hershey described the progress of asbestosis as, first, a mild deposit of asbestos dust without much irritation, then a secondary stage, where the lung tissue hardens and becomes fibrotic, and the third stage, which is a continuation and aggravation of the second state.

Dr. Paul O. Snoke, an X-ray specialist, testified that on April 23, 1935, he made an X-ray of plaintiff's chest and found a moderately well-developed first-stage asbestosis; that he again examined claimant on January 22, 1938, and at that time found claimant to be suffering from the first stage of asbestosis, with early pulmonary tuberculosis of chronic fibrous type and a constricted pericarditis. Claimant had developed tuberculosis between the times of taking the two X-rays. Dr. Snoke attributed claimant's disability to three causes: asbestosis, tuberculosis, and heart trouble. Dr. Snoke further testi-

fied that he was of the opinion that claimant's heart condition was the primary cause of his disability, to the extent that 75 percent of claimant's condition was due to his heart; 25 percent to his lungs. From this qualification, in Dr. Snoke's opinion, it is entirely probable that the chronic constricted pericarditis is tubercular in origin. Dr. Snoke further testified that tuberculosis of the pericardium was the precise nature of the heart difficulty; that a heart condition caused by asbestosis would have produced a very much enlarged heart, whereas claimant's heart was exceedingly small. Dr. Snoke then testified that he believed that asbestosis played a definite part in reducing the resistance and allowing tuberculosis to develop.

On behalf of defendant Dr. Wilhelmina S. Scott, of the Lancaster General Hospital, testified that she had X-rayed claimant in June 1933. Dr. Scott testified that, in her opinion, asbestosis plays a certain percent in claimant's disability, but that claimant's chief disability came from his infection about the pericardium, and that this infection probably is tubercular in origin. At the time Dr. Scott examined claimant, she testified that she found that claimant was not totally disabled as a result of asbestosis alone.

Dr. Hershey was recalled and testified that in his opinion the heart condition was due to the extra burden placed on the heart due to the constricted condition of claimant's lungs.

The opinion of the Workmen's Compensation Board recites that the referee made an award for total disability resulting from asbestosis. Thereupon, defendant insurance carrier appealed, and has raised the question of the constitutionality of the Occupational Disease Compensation Act, supra. The board declined to enter into any discussion of the question of constitutionality because such question was not for the board's consideration.

Under the established practice in Pennsylvania in workmen's compensation cases, the compensation author-

ities decide questions of fact and the courts questions of law. On appeal the only question for the court is, "Does the record contain legally competent evidence to sustain the findings of fact?" In the present case the Workmen's Compensation Board sustained the findings of the referee, that asbestosis was the cause of tuberculosis of the lung; and that tuberculosis of the lung has spread to and affected the pericardium. The primary cause of both the tuberculosis and of the pericarditis was asbestosis. The board in its opinion says that it matters not at all that the present picture shows the major portion of total disability to be due to the tuberculosis of the heart, and further says that if the pericarditis were due to some independent cause the result would be otherwise, but that, where the pericarditis is directly due to the tuberculosis, which in turn is directly due to the asbestosis, it cannot be said that the disability is not the direct and primary result of asbestosis.

Legal questions raised before the board and on this appeal are:

1. The constitutionality of the Occupational Disease Compensation Act of July 2, 1937, P. L. 2714.

2. The Occupational Disease Act of 1937 provides, at the end of section 3, " 'Disability' as used herein means the state of being so disabled. The date when the disability occurs from occupational disease shall be deemed to be the date of the injury or accident."

The board refused to accede to appellant's contention that, since the record establishes that there was at least partial disability prior to the effective date of the act, therefore the date of the accident must be deemed to be prior to the effective date of the act, and hence the present claimant cannot come within the terms of the Occupational Disease Compensation Act. The board found that if the present case involved any occupational diseases other than those mentioned in section 2(k) and (l) this contention would have merit, but said that the three diseases herein referred to are compensable only when

the disability is total: See section 5(*b*). The board was of the opinion that the date of the accident as defined in the last sentence of section 3 is the date of the onset of compensable disability, and that, therefore, as to asbestosis, as well as to silicosis and anthraco-silicosis, the date when total disability begins is the date of the accident.

The referee found that claimant's average weekly wage was $40.98 on January 15, 1938, and awarded to claimant compensation at the rate of 65 percent of $40.98, or the sum of $18 per week (the maximum under the act), for a period of 500 weeks, and thereafter at $30 per month, provided claimant's disability remains unchanged during that period. This award is payable as follows: The Pennsylvania Manufacturers' Association Casualty Insurance Company is to pay one tenth of $18, or the sum of $1.80 per week, beginning from January 15, 1938, and to continue for such time as claimant's disability shall remain unchanged, not to exceed in the aggregate the sum of $3,600, and the Commonwealth of Pennsylvania is directed to pay to Dawson M. Rhoads, claimant, the sum of nine tenths of $18, or the sum of $16.20, per week beginning from January 15, 1938, out of monies to the credit of the Second Injury Reserve Account, as provided in section 7(*a*) of the Occupational Disease Supplement to The Workmen's Compensation Act of 1915. Interest was awarded from January 29, 1938, to the date of payment of the award. Defendant employer also was directed to pay reasonable medical and hospital expenses incurred by claimant during the first three months of disability.

On behalf of the Pennsylvania Manufacturers' Association Casualty Insurance Company, defendant's insurance carrier, appellant's counsel have filed the following statement of the questions involved:

"1. Is the Workmen's Compensation Board correct in its interpretation of the Occupational Disease Compensation Act by imposing a total liability of $36,000, $3,600 against the employer, and $32,400 against the Second

Injury Reserve Account, instead of a total liability of $3,600, $360 against the employer, and $3,240 against the Second Injury Reserve Fund?

"2. Does the opinion legally limit liability against the employer to $3 per month after the termination of the first 500-week period?

"3. Is the Compensation Board correct in refusing to assess any portion of the costs in this proceeding against the Second Injury Reserve Account of the Commonwealth of Pennsylvania?

"4. Does the evidence warrant a finding that defendant's disability was caused primarily by asbestosis and is, therefore, compensable?

"5. Does the undisputed fact that plaintiff suffered partial disability prior to January 1, 1938, permit him to recover or does partial disability prior to the effective date of the Occupational Disease Compensation Act preclude a recovery thereunder?

Since the Second Injury Reserve Account of the Commonwealth of Pennsylvania is interested in this case, counsel for the State Workmen's Insurance Fund have appeared, and in their brief state the question raised as follows:

"The question raised on this appeal is one of law. It is one which relates to the construction of sections 5(*b*) and 7(*a*) of the act known as the Occupational Disease Compensation Act of July 2, 1937, P. L. 2714.

"Claimant above mentioned suffered one of the occupational diseases specified in section 5(*b*) of said act, and the only question that arises is how much compensation is he entitled to under the provisions of said act. The Workmen's Compensation Board has taken the view that the employer's liability to claimant is $3600, without any limit on the Second Injury Reserve Account of the Commonwealth of Pennsylvania, except as provided under the provisions of the act known as The Workmen's Compensation Act.

"The view of appellant is that the $3600 specified in section 5 (*b*) limits the liability of both the employer and the Commonwealth."

Section 5 (*b*) of the Occupational Disease Compensation Act provides as follows: "Compensation shall not be payable for partial disability due to silicosis, anthraco-silicosis, or asbestosis. Compensation shall be payable, as otherwise provided in this act, for total disability or death caused primarily (as definitely distinguished from a contributory or accelerating cause) by silicosis, anthraco-silicosis, or asbestosis . . . or asbestosis, when accompanied by active pulmonary tuberculosis or streptococcic infection of the lung. The total liability of the employer unto the employe or his dependents under this section shall not exceed the sum of thirty-six hundred dollars ($3600)."

Appellant contends that claimant's condition is due 25 percent to asbestosis, and 75 percent to cardiac condition apart from occupational disease.

The Workmen's Compensation Board has found that an occupational disease was the cause of claimant's condition.

"The workmen's compensation board is the final fact-finding body in compensation cases. Where the findings of fact made by the board are based on competent evidence they are conclusive, and our courts have no power to weigh the evidence and revise those findings or reverse the final action of the board": Paulin v. Williams & Co. et al., 327 Pa. 579, 583.

Hence this court must accept as final the compensation board's conclusion that claimant's condition is the result of an occupational disease, namely, asbestosis.

So far as the constitutionality of the Occupational Disease Compensation Act is concerned, this court feels that no doubt exists as to the validity of such legislation. An amendment to the Constitution of Pennsylvania, adopted November 2, 1915, permits the General Assembly to enact laws requiring the payment of reasonable

compensation to employes for occupational diseases. See Constitution, art. III, sec. 21. Since the General Assembly has exercised its constitutional prerogative within the limits of its prescribed authority, it is not for the courts to strike down the assembly's act unless such act is clearly violative of established legal principles. The Supreme Court of Pennsylvania, in Anderson v. Carnegie Steel Co., 255 Pa. 33, upheld the validity of The Workmen's Compensation Act of 1915, supra. The courts properly found that this act did not provide for compensation for occupational diseases, but was limited in its application to cases of injuries resulting from accidents suffered in the course of employment. The Constitution, as stated, was amended to enlarge the powers of the General Assembly. There has been presented to this court no valid reason why this Occupational Disease Compensation Act should be declared unconstitutional.

The legislature will be deemed to have intended to enact a valid and constitutional statute, and the statute must be thus construed, when it can be so construed without doing violence to the legislative intent.

These conclusions having been reached there remain but two questions for decision, the first of which is: In a case of total disability caused primarily by silicosis, anthraco-silicosis, or asbestosis, or by silicosis, anthraco-silicosis, or asbestosis, when accompanied by active pulmonary tuberculosis or streptococcic infection of the lung, as defined in section 5(b) of the Occupational Disease Compensation Act, is compensation limited to a total award of $3,600 as fixed in said section 5(b), or is compensation to be awarded on the basis determined in this case by the Workmen's Compensation Board?

The award of the referee, as sustained by the Workmen's Compensation Board, in this case fixed compensation as above stated.

For convenience at this point the court concludes to designate as "Commonwealth" the agency known as "Commonwealth of Pennsylvania Second Injury Reserve

Account" and to designate as "Insurer" the Pennsylvania Manufacturers' Association Casualty Insurance Company.

On appeal from the award to Rhoads, claimant here, Commonwealth contends that the award cannot stand because it exceeds in amount the total sum of $3,600, fixed in section 5 of the Occupational Disease Compensation Act, and further contends that the result reached by the board cannot stand because such result is absurd, impossible of execution, and unreasonable, and that there is a legal presumption that the legislature did not intend a result so characterized.

Section 7(a) of the Occupational Disease Compensation Act, Commonwealth further contends, gives industry 10 years to adjust itself to meet the increased burdens imposed by the act, and the Commonwealth undertakes under this section to assist industry for the first 10 years after the effective date of the act by paying, first, nine tenths of the compensation, and gradually decreasing this amount until, after the expiration of the 10-year period, the employer shall assume full responsibility. At the end of 10 years, says the Commonwealth, if the provisions of section 5(b) mean what they say, the total award possible will be a sum not exceeding $3,600. Whereas, if the finding in the instant case stands, total awards much greater in the aggregate than the sum of $3,600 will be possible during the 10-year period, but no award in the aggregate greater than $3,600 will be possible in accidents happening after the 10-year period has expired. Such a result would be unfair and unreasonable, the Commonwealth contends, and for this reason the award to Rhoads must be reversed.

On behalf of the insurer, counsel contend that the award of the board in the present case produces a total liability to claimant to the amount of $36,000 whereas a like sufferer in 1948 could receive no more than $3,600. Insurer admits that the act is not clear on this point but contends that the courts, in interpreting the act, must

give the act a more sensible interpretation than has been given it by the Workmen's Compensation Board in the Rhoads case.

Mr. Justice Maxey, in the case of Null v. Staiger, 333 Pa. 370, 376, said:

"While a statute should receive the most reasonable and beneficial interpretation available *(Orlosky v. Haskell*, 304 Pa. 57, 155 A. 112; *Thomas's Election*, 198 Pa. 546, 48 A. 498), this is not to overcome, at all costs, obvious objections on the grounds of absurdity, hardship and inconvenience: *Fazio v. Pittsburgh Rys. Co.*, 321 Pa. 7, 182 A. 696."

The Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 52, 46 PS §552, says: "In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others:

"(1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable. . . . .

"(5) That the Legislature intends to favor the public interest as against any private interest."

To try to operate a compensation system under the theory adopted by the Workmen's Compensation Board in this case would have the result of heavily burdening certain industries whose continuance is necessary for the public welfare. The Occupational Disease Compensation Act is legislation of the highest humanitarian kind. The legislature is to be commended for passing such a beneficent act. However, in interpreting the act, the courts must find the most sensible and reasonable plan possible, whose adoption must have been the legislature's true intent. This court feels that the award in the present case cannot be allowed to stand.

We now come to the second question for consideration, namely: Is the date of the accident the time when total disability begins?

In answering this question it seems unnecessary to go beyond the provisions of section 5(b) of the act, for the simple reason that, since this section of the act allows compensation for "total disability" only, the onset of total disability must mark the happening of the "accident". Section 3, paragraph 2, provides: " 'Disability' as used herein means the state of being so disabled. The date when the disability occurs from occupational disease shall be deemed to be the date of injury or accident." Since section 5(b) allows compensation only for total disability, and section 3 defines the date of the accident to be the date when disability occurs, this court feels bound, under the clear provisions of the act, to conclude that the date of the accident in the present case was the date when total disability occurred. The Compensation Board well says:

"If the instant case involved any other occupational disease than asbestosis, silicosis, or anthraco-silicosis, this contention would unquestionably have merit. These three diseases, however, are compensable only when the disability is total. All the other occupational diseases listed in the schedule of section 2 are compensable if the disability be partial. We are of the opinion that the date of the accident, as defined in the last sentence of section 3, is the date of the onset of compensable disability, and that, therefore, as to asbestosis, as well as to silicosis and anthraco-silicosis, the date when total disability begins is the date of the accident."

The legislature has fixed the total liability of employer and Commonwealth of Pennsylvania Second Injury Reserve Account at the sum of $3,600, and this court so finds. The amount of $3,600 is the total compensation allowable.

In this case no appearance was entered for claimant, nor was any brief filed in his behalf. Nevertheless this court carefully has considered the rights of claimant here under the act now before this court.

The appeal is sustained and the record in this case is remitted to the Workmen's Compensation Board for the purpose of making an award along the lines herein indicated.