## Laughlin's Estate

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner, and Hunter, JJ.

*Lemuel B. Schofield, Charles G. Gartling,* and *W. Bradley Ward,* for exceptants.

*Joseph V. Somers,* contra.

HUNTER, J., October 20, 1944.—The auditing judge followed the established practice of bringing into hotchpot the debts or advances which the testatrix in her will had charged against the share of her son George and his family. He directed that these sums be added to the actual estate, the total divided equally among all the children, and there be deducted from George's share, as thus determined, the sums mentioned in the will. This method assured equality among distributees, because it restored the estate to the value it was before the advances were made, precisely as if the distributee had repaid the amounts in question to the decedent during her lifetime or to the estate after her death.

The exceptants in effect contend that George should not be permitted to make repayment to the estate, but that the will restricts him to a share of the actual assets and requires him to pay the full amount of his debts or advances to the other children.

We agree with the auditing judge that the sole purpose of the testatrix was to secure equality among her children, and that this purpose should not be defeated by a rigid and unbending interpretation of the language of the will. The testatrix's purpose can be fully accomplished within the meaning of the will by requiring her son to pay the full amount of his indebtedness to the estate without penalizing him in an amount over and above his indebtedness. "A scheme of distribution unusual in our law requires plain and unequivocal language to establish it": Conner's Estate (No. 2), 318 Pa. 150 (160). " . . . a construction which will lead to an unreasonable result should be avoided": Hannach's Estate, 332 Pa. 145 (148). "In the interpretation of wills the precise, literal meaning of words is not to be too closely adhered to, and all rules for the

mere definition of words must give way when they conflict with fundamental principles not affected by the rules of grammar or etymology": Hubbert's Estate, 6 Dist. R. 96, 97.

There is a strong rule of construction in favor of equality among children and against invidious distinction between heirs: Hirsh's Trust Estate, 334 Pa. 172; Hogue's Estate, 135 Pa. Superior Ct. 543.

Attention is called particularly to McConomy's Estate, 170 Pa. 140, where a similar situation existed and where Mr. Justice Fell said (p. 150):

"The deduction was not for the exclusive benefit of the other children, but in order that their shares should not be reduced by reason of the indebtedness of H. R. McConomy to his father's estate, and that under the change of beneficiaries provided by the codicil they should all be treated alike. The nine hundred dollars should have been treated as its payment would have been. It would then have been a part of the estate to be distributed among all the children."

The auditing judge has forcefully presented our views in his adjudication, and we deem it unnecessary to comment at length upon that which he has so well said.

In their ninth and tenth exceptions, exceptants charged error in the direction by the auditing judge that the fee of the guardian ad litem be paid out of the whole estate. Exceptants claim that it should have been charged against the principal of the share directed by will to be held in trust for George Laughlin. At the argument, we pointed out that this was ordinarily a matter for the auditing judge, whose judgment would be set aside only where an abuse of discretion is shown, and that usually the representation is necessary for proper consideration of questions of distribution, so that all parties benefit by having a question put in a position to be disposed of, whereupon counsel for exceptants stated that he would not press the exception further.

The six judges who heard the argument in this case are unanimous that exceptions nine and ten should be dismissed, but are equally divided in their opinion as to the first eight exceptions which involve the interpretation of the will.

All exceptions are therefore dismissed, and the adjudication is confirmed absolutely.

Van Dusen, P. J., and Bolger, J., concur in this opinion.

### Dissenting opinion

LADNER, J.—The exceptants here are two of decedent testatrix's three children and their first eight exceptions charge error in the distribution ordered by the learned auditing judge, in that he applied the doctrine of "hotchpot" and directed that certain sums aggregating $9,533.09, directed by testatrix to be charged against one third of her residuary estate set up as trust for her son George should first be added to the residuary estate before its division. Exceptants argue that by the terms of the will testatrix directed that these sums be charged against George's share alone.

The doctrine of "hotchpot" (sometimes called "hodge podge" or "hotch potch") is a method of distribution by which advancements made to heirs during an intestate's lifetime are treated as if actually repaid to the estate and the total estate, as thus augmented, divided among the heirs, the amount of the advancements being deducted from the share of the one advanced. It is an equitable doctrine designed to bring about equality among heirs. Advancements are confined to cases of intestacy except in the event of a will which clearly expresses otherwise or where the donor has died intestate as to part of his property: O'Connor et al. v. Flick, 271 Pa. 249, 253; Loesch's Estate, 322 Pa. 105. Here, therefore, we must look to the will of the testatrix to determine to what extent the doctrine of

hotchpot is applicable. Testatrix's direction, as expressed in her will, must be respected as controlling.

Testatrix, after directing payment of debts and funeral expenses, in item second of her will gave the residue of her estate as follows:

"To my trustee . . . one-third thereof in trust, however, for the uses and purposes as hereinafter set forth for the benefit of my son, George Laughlin, and his family; provided, however, that inasmuch as my son, George Laughlin, the beneficiary of this Trust Estate, has received from me during my lifetime sums of money at various times, in excess of amounts given to my other children, I direct that his portion of my estate shall be chargeable as follows: First, with an amount equal to the carrying charges, namely, taxes and water rent of my property known as 650 E. Westmoreland Street in the City of Philadelphia, for the term that he has occupied it, approximately eighteen years preceding the date of this my will. Second, with an additional amount equal to the taxes and water rent of my said property at 650 E. Westmoreland Street from the date of this my will, until my decease. Third, with any and all sums of money which I may advance to him or to his wife from the date of July 15th, 1937, until my decease, an account of which shall be kept by me.

"And the Trust Estate, as so diminished, I direct my Trustee to administer as follows: To invest, reinvest and keep invested the principal thereof, which shall include my property at 650 E. Westmoreland Street, at a valuation as regards the distribution of my estate, of Four thousand one hundred and fifty dollars, and to apply the income therefrom to the support and maintenance of my son, George Laughlin, and his dependents, in weekly installments of Twenty-five dollars."

Then follows a direction to the trustee to expend, if necessary, principal and income for the benefit of

George and his dependents in trustee's unrestricted discretion, and certain other trust directions not here pertinent. After thus providing, the testatrix continues: "And the remainder of this Trust fund upon the death of my son, George Laughlin, shall be distributed among his descendants according to the intestate laws of the Commonwealth of Pennsylvania."

Testatrix then provides: "And all the remainder of my said residuary estate, I direct shall be divided equally between my son, Henry Laughlin and my daughter, Stella M. Shannon . . . absolutely."

The learned auditing judge in his adjudication indicates he felt that the testatrix did not clearly express the method of distribution that she had in mind, and as there was an uncertainty the intention of the law leans toward equality, with due weight to be given to the presumption that an heir is not to be disinherited except by plain words or necessary implications. Since the doctrine of "hotchpot" makes for general equality, he applied the doctrine and made distribution accordingly. In so doing, I think he erred.

Canons of construction and rules of presumed intent can be resorted to only where a testator's language is not clear or unambiguous: Rosengarten Estate, 349 Pa. 32; Ludwick's Estate, 269 Pa. 365.

"The intent of the testator which is to be discovered and carried out means his actual personal intent, and not a mere conventional intent inferred from his use of any set phrase or form of words": Tyson's Estate, 191 Pa. 218 (syllabus).

It will be observed, upon reading the will as a whole, that testatrix did not divide her residue in *equal* shares but gave a portion thereof which she directed to be measured by one third of the residue, less deductions of certain items which she specified with particularity, and directed to be charged against George's portion. This interpretation is confirmed by her use of the following language in the paragraph after the specifica-

tion of the deductions, viz: " . . . and the trust estate, *as so diminished*, I direct Trustee to administer as follows, etc."

Having thus fixed and measured the portion that was to be set up in trust for her son George, testatrix in the final paragraph of the second item of her will uses this language:

"And all the remainder of my said residuary estate, I direct shall be *divided equally* between my son, Henry Laughlin and my daughter, Stella", etc. (Italics supplied.)

It should be noticed that this is the only place in the will where the testatrix uses the word "equally" or its equivalent, and the fact that she uses it there, and not elsewhere, significantly confirms her intention not to make an absolutely equal division among all three children, but only as to the two.

It is not for us to rewrite the testatrix's will, nor to speculate as to the reason why she preferred this method of distribution. It is our duty to give effect to her clearly-expressed intention. To ignore the phrases referred to would be tantamount to making them meaningless.

The learned auditing judge, in adopting his plan of distribution, cites Wagner's Appeal, 38 Pa. 122, McConomy's Estate, 170 Pa. 140, and Doverspike's Estate, 61 Pa. Superior Ct. 318, but an examination of those cases shows that there the testators, by express language, directed an *equal* division of their assets. This is emphasized at the very beginning of the opinions of the Supreme Court in the first two cases.

I would sustain the first eight exceptions. Judge Sinkler and Judge Klein concur in this opinion.